108 T.C. No. 21


UNITED STATES TAX COURT


MAGGIE MANAGEMENT COMPANY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8017-94.                    Filed June 11, 1997.


    P, a California corporation, filed a petition for
redetermination before the enactment of the Taxpayer
Bill of Rights 2 (TBR2), Pub. L. 104-168, 110 Stat.
1452 (1996).  Among the amendments made to sec. 7430,
I.R.C., by TBR2 was a change regarding the burden of
proof.  Prior to amendment, sec. 7430, I.R.C., required
the taxpayer to prove that the Commissioner's position
in the administrative and court proceedings was not
substantially justified.  Sec. 7430, I.R.C., now
requires that the Commissioner establish that the
Commissioner's position in such proceedings was
substantially justified.  This amendment is effective
in the case of proceedings commenced after July 30,
1996, the date of enactment of TBR2.

    P's case was consolidated for trial, briefing, and
opinion with that of Mr. and Mrs. O, with whom P had a
business relationship.  The nature of this relationship
was litigated before a State court jury, which found in

favor of P. P and Mr. and Mrs. O took positions in the State court litigation which were contrary to the positions each took in this case. To avoid whipsaw, R took inconsistent positions against P and Mr. and Mrs. O. When Mr. and Mrs. O conceded the principal issue in their case, R conceded the issue in P's case. Thereafter, P filed a motion to recover administrative and litigation costs pursuant to sec. 7430, I.R.C.

1. <u>Held</u>: Because P commenced its case (by filing a petition for redetermination) before the enactment of TBR2, P bears the burden of proving that R's position was not substantially justified.

2. <u>Held</u>, <u>further</u>, P failed to carry its burden of proof that R's administrative and litigation position was not substantially justified, and is therefore not entitled to an award of reasonable administrative and litigation costs.

<u>Alec Valk</u>, <u>Terrence J. Moore</u>, and <u>Joseph E. Mudd</u>, for petitioner.

<u>Lisa N. Primavera</u>, for respondent.

OPINION

NIMS, <u>Judge</u>: This matter is before the Court on petitioner's Motion for an Award of Reasonable Litigation and Administrative Costs (motion for costs) filed pursuant to Rule 231 and section 7430 on January 2, 1997. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to sections of the Internal Revenue Code in effect at the time the petition was filed.

Respondent issued a statutory notice of deficiency on February 14, 1994, in which deficiencies in income tax and additions to tax were determined as follows:

| Tax Year Ended | Deficiency | Additions to Tax | |
|---|---|---|---|
| | | Sec. 6653(a) | Sec. 6661 |
| July 31, 1988 (TYE 1988) | $93,500 | $4,675.00 | $23,375 |
| July 31, 1989 (TYE 1989) | 73,651 | 3,682.55 | 20,883 |
| Total | 167,151 | 8,357.55 | 44,258 |

The notice of deficiency also made adjustments to petitioner's fiscal 1990 tax year, although no deficiency was determined for that year. A petition was filed on May 16, 1994. At that time, petitioner (or MMC), a California corporation, had its principal office at 6800 Bayshore Walk, Long Beach, California.

On June 20, 1994, respondent filed an answer to the petition. After the case was calendared for trial, but prior to trial, the parties filed a Stipulation of Settled Issues. A stipulated Decision was entered by the Court on November 29, 1996, setting forth deficiencies of $6,249 and $5,245, and no additions to tax, for TYE 1988 and TYE 1989, respectively. Petitioner thereafter filed its motion for costs. (Petitioner did not submit a memorandum of points and authorities in support of its motion for costs.) In accordance with section 7430 and Rule 232, and pursuant to the Court's Order, the stipulated Decision was vacated and set aside, and filed as a Stipulation of

Settled Issues. Respondent filed a response to petitioner's motion for costs on March 3, 1997, pursuant to the Court's Order. No hearing has been requested, and none is necessary. Rule 232(a)(3).

The issues for decision are whether petitioner qualifies as a "prevailing party" for purposes of section 7430 and, if so, whether the administrative and litigation costs petitioner seeks are reasonable, and whether petitioner has unreasonably protracted the administrative or court proceedings.

## Background

The following facts are based on the entire record, including the affidavits and exhibits submitted by the parties with respect to the motion for costs, the parties' pleadings, their stipulated settlement, various other motions, and supporting documents.

Petitioner was incorporated in 1984 to assist in managing the business activities and assets of John Ohanesian (Ohanesian) that he had received upon the dissolution of a previous partnership. Margaret Gehan (Margaret) is the president, and Glenn M. Gehan (Mike) is the vice president, of petitioner. Margaret was MMC's sole shareholder during all relevant times.

The relationship between petitioner and the Ohanesian family was not defined by written agreements until 1987. These agreements provided that petitioner was to provide management or

consulting services to the Ohanesian Family Trust (the Trust) and Seven Resorts, Inc. (SRI), a corporation controlled by the Trust (collectively referred to herein as the related entities), in exchange for an annual fee equal to 2 percent of the gross assets owned by the Trust and 2 percent of the gross revenue realized by SRI. The written agreements contained no provision which obligated or required petitioner to pay personal expenses of the Ohanesian family or SRI. Nevertheless, during the years in issue, petitioner purchased and maintained several luxury automobiles for members of the Ohanesian family. Petitioner also leased and furnished office space for SRI.

During TYE 1988 and TYE 1989, petitioner received funds from SRI and the Trust through John and Ethel Ohanesian (the Ohanesians). Petitioner reported the amount of funds received as income on its Federal income tax returns for those years. On its returns for TYE 1988 and TYE 1989, petitioner claimed deductions for various expenses, including the depreciation and upkeep of the luxury vehicles for members of the Ohanesian family and office space for SRI. On their joint Federal individual income tax returns for the years overlapping petitioner's taxable years at issue, the Ohanesians deducted the amounts paid to petitioner as investment expenses.

At some point in 1989, Mike and Ohanesian had a "falling out", which resulted in Ohanesian's terminating the agreements on November 15, 1989, and withholding payment of the contract fees

to petitioner. Although the stock of petitioner was nominally owned by Margaret, Ohanesian claimed that petitioner was in fact "his" corporation. On this basis, Ohanesian demanded that Mike and Margaret (the Gehans) surrender to him the stock of petitioner, together with all assets "currently ow[n]ed" by petitioner, including the automobiles, office furnishings, and equipment. (Although petitioner held title to the property described above, the Ohanesian family and the related entities had possession of those assets.)

In response to the termination of the agreements, the Gehans and petitioner sued the Trust, the Ohanesian family, and SRI in Superior Court of the State of California for, among other things, breach of contract, recovery of the luxury automobiles, and for recovery of the office equipment and furnishings used by SRI. In its complaint, petitioner alleged the following facts to be true: (1) Petitioner was the owner of the luxury automobiles; (2) the members of the Ohanesian family had converted the automobiles to their personal use; (3) petitioner was the owner of the office equipment and furnishings used by SRI; and (4) the written agreements between the parties were valid and enforceable. In a sworn declaration accompanying the complaint, Margaret, as president of petitioner, stated that petitioner was at all times independent of the Trust and SRI.

The Ohanesian family, the Trust, and SRI alleged in their cross-complaint that the management agreements were "fictitious"

in that the fees to be paid to petitioner were actually earmarked to pay the personal expenses of the Ohanesian family and SRI. This arrangement, according to Ohanesian, was established by oral agreement of the parties entered into prior to the date of the written agreements.  Ohanesian maintained that petitioner was actually his corporation, and that Margaret owned the stock in name only so that it would appear that petitioner was an independent entity.  Ohanesian later testified that MMC was incorporated at his behest because he "needed a means of buying vehicles, expensing items if * * * [he] was going on business trips, [and] paying * * * [his] children, without it looking like a gift."  The cross-complaint further alleged that the office furniture, equipment, and luxury vehicles were the rightful property of the Ohanesian family or SRI.

At all times during the State court litigation, petitioner maintained that it was an independent entity and that the terms of the written agreements exclusively defined its relationship with the Ohanesian family and related entities.  Petitioner contended that parol evidence could not be considered to vary or contradict the terms of such agreements or show that there was a separate oral agreement that petitioner was to function as a conduit or agent of Ohanesian and the related entities. Petitioner asserted that it provided real and substantial management services in exchange for the agreed-upon fees.  In his State court deposition, Mike explained petitioner's purchase of

the luxury automobiles and the provision of the office space to SRI as due to "the substantial business relationships with the Ohanesian Family Trust, and John [Ohanesian] asked for it."

The suit between petitioner and Ohanesian was decided by a jury. In pertinent part, the jury's special verdict found as follows: (1) Valid contracts existed between petitioner and the related entities; (2) petitioner performed as required under the contracts; and (3) members of the Ohanesian family and the Trust converted personal property to their own use.

As a result of the conflicting allegations and testimony in the State court suit, and petitioner's and the Ohanesians' failure to offer any other evidence to substantiate their claims, respondent issued statutory notices of deficiency to both the Ohanesians and petitioner. In the notice of deficiency to the Ohanesians, respondent determined that the amounts paid to petitioner by the Ohanesians did not constitute investment expenses and were, therefore, not deductible. This determination was supported by Ohanesian's testimony in State court that petitioner was a conduit for payment of his personal expenses.

In petitioner's notice of deficiency, respondent disallowed, among other things, the following expenses (collectively referred to herein as the Ohanesian-related items):

| Adjustments to Income | TYE 1988 | TYE 1989 |
|---|---|---|
| Automobile depreciation | $17,280 | $21,900 |
| Other automobile costs | 20,475 | 39,568 |
| Ohanesian expenses | 26,592 | 12,569 |

SRI expenses                164,352          128,268

In the Explanation of Adjustment attached to the notice of deficiency, respondent explained that petitioner had not established that the amounts claimed were paid or incurred during those taxable years or that the expenses were ordinary and necessary to petitioner's management and consulting business.

In their respective Tax Court cases, petitioner and Ohanesian adopted positions substantially at odds with each other, as well as with the position each had taken in the State court case. Ohanesian maintained that his payments to petitioner were for legitimate management expenses. Ohanesian further contended that the consulting agreements were valid and enforceable as written. Petitioner, on the other hand, posited that it was an agent of Ohanesian and that the payments for the automobiles and other expenses of the Ohanesian family and related entities were on account of that relationship. In this regard, petitioner theorized that, since it had recognized income on moneys received from its principal (Ohanesian) that were used to pay expenses as directed by Ohanesian, it was entitled to deduct those payments. (Remaining adjustments were unrelated to the Ohanesian-related items. It was generally understood by petitioner and respondent that these items would be resolved after the Ohanesian-related items were resolved, since the former were so small as to be de minimis in comparison with the latter.) In so arguing, petitioner relied on the existence and validity of

a purported oral agreement--the same oral agreement that petitioner previously had denied the existence or validity of in the State court action. Further, petitioner disregarded the jury's finding that the automobiles and office furnishings and equipment were its personal property and not the property of the Ohanesian family or related entities. In the alternative, petitioner contended that the expenses were deductible business expenses because "the jury decision includes a determination that the Petitioner was obligated to pay each and every one of the expenses disallowed by the Notice of Deficiency, as a part of its contractual obligation with the Ohanesian Entities." Petitioner asserted that its receipt of management fees was conditioned on its payment of the disallowed expenses on behalf of Ohanesian and the related entities.

The Ohanesians and petitioner subsequently settled their cases with respondent prior to trial. The Ohanesians conceded that they were not entitled to deductions for the portion of the fees paid to petitioner which were ultimately used to pay for nondeductible personal expenses. The Ohanesians' concession in turn enabled respondent to concede that the payments made by petitioner to fund those same personal expenses were made in petitioner's capacity as a conduit for the Ohanesians. As such, the payments were allowed to offset income which MMC had recognized on the funds it had received from the Ohanesians. The

Stipulation of Settled Issues resulted in "no-change" for petitioner as to the Ohanesian-related items.

## Discussion

We must decide whether petitioner is entitled to reasonable litigation and administrative costs pursuant to section 7430.

Section 7430(a) provides that the prevailing party in any administrative or court proceeding may be awarded a judgment for (1) reasonable administrative costs incurred in connection with such administrative proceeding within the IRS, and (2) reasonable litigation costs incurred in connection with such court proceeding.

Congress has enacted and amended several versions of section 7430. As originally enacted by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 292(a), 96 Stat. 324, 572, section 7430 was applicable to "civil actions or proceedings commenced after February 28, 1983." TEFRA sec. 292(e)(1), 96 Stat. 574.

In 1986 and 1988, Congress extensively amended section 7430. The amendments enacted by the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, sec. 1551, 100 Stat. 2085, 2752-2753, generally apply to "civil actions or proceedings commenced after December 31, 1985." TRA 1986 sec. 1551(h)(1), 100 Stat. 2753. The amendments enacted by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239(a), 102 Stat. 3342, 3743-3746, generally apply to "proceedings commencing after

[November 10, 1988]".  TAMRA sec. 6239(d), 102 Stat. at 3746.
(Congress also amended section 7430 in the Deficit Reduction Act
of 1984 (DRA 1984), Pub. L. 98-369, sec. 714(c), 98 Stat. 494,
961.  This amendment is effective "as if included in * * *
[TEFRA]".  DRA 1984, sec. 715, 98 Stat. 966).

Section 7430(c)(4)(A)(i), as amended by TAMRA, sec. 6239(a),
102 Stat. 3745, provided as follows:

(4) Prevailing party.--

(A) In general.--The term "prevailing party" means
any party in any proceeding to which subsection (a)
applies (other than the United States or any creditor
of the taxpayer involved)--

(i) which establishes that the position
of the United States in the proceeding was
not substantially justified,

Section 7430 was most recently amended by the Taxpayer Bill
of Rights 2 (TBR2), Pub. L. 104-168, secs. 701-704, 110 Stat.
1452, 1463-1464 (1996).  Among other things, the amendments
require that the Commissioner establish that the Commissioner's
position in such proceedings was substantially justified.  TBR2
sec. 701(a) and (b), 110 Stat. 1463.  As relevant to this case,
TBR2 sec. 701(b), 110 Stat. 1463, amended section 7430 by
striking clause (i) of section 7430(c)(4)(A) and by adding the
following subparagraph:

(B) Exception if United States establishes that
its position was substantially justified.--

(i) General Rule.--A party shall not be
treated as the prevailing party in a proceeding to
which subsection (a) applies if the United States

> establishes that the position of the United States
> in the proceeding was substantially justified.

The amendments are effective with respect to "proceedings commenced after [July 30, 1996]".  TBR2, secs. 701(d), 702(b), 703(b), and 704(b), 110 Stat. 1464.

We first consider whether TBR2 applies in this case.  The petition was filed on May 16, 1994, and the motion for costs was filed on January 2, 1997.  If the "proceeding" were commenced with the filing of the petition, then section 7430 as amended by TAMRA would apply and petitioner would be required to establish that respondent's position was not substantially justified.  However, if the "proceeding" were commenced with the filing of petitioner's motion for costs, then section 7430 as amended by TBR2 would apply, and respondent must establish that respondent's position was substantially justified.  As discussed below, we conclude that for purposes of the effective date provisions of TBR2, a court "proceeding" is commenced upon the filing of a petition under section 6213 for redetermination of a deficiency.  See Schlicher v. Commissioner, T.C. Memo. 1997-163; Austin v. Commissioner, T.C. Memo. 1997-157.  (We leave for another day the issue of when administrative proceedings are commenced for purposes of the effective date provisions of TBR2, as such determination is unnecessary for the disposition of this matter.  Accordingly, unless otherwise indicated, the term "proceeding(s)"

used throughout this Opinion will refer solely to court proceedings.)

Following the enactment of section 7430, this Court held that a "proceeding" was commenced with the filing of a petition for redetermination of a deficiency. Whitesell v. Commissioner, 90 T.C. 702 (1988) (where the taxpayer's petition was filed before February 28, 1983, but the motion for costs was filed after such date, the case was commenced with the filing of the petition, and the Court was therefore without authority to award costs); see also Molsen v. Commissioner, 85 T.C. 485, 511 (1985); Roberts v. Commissioner, T.C. Memo. 1987-391 n.21 ("The petition in this case was filed in 1980 * * * [and] section 7430 is therefore inapplicable."), affd. 860 F.2d 1235 (5th Cir. 1988).

Similarly, this Court has consistently looked to the filing date of the taxpayer's petition in applying the effective date provisions of the amendments to section 7430 enacted by TRA 1986 and TAMRA. See Estate of Satin v. Commissioner, T.C. Memo. 1994-435; Buck v. Commissioner, T.C. Memo. 1993-16; Carey v. Commissioner, T.C. Memo. 1992-338; Schaefer v. Commissioner, T.C. Memo. 1991-426; Estate of Lenheim v. Commissioner, T.C. Memo. 1991-21; Lewis v. Commissioner, T.C. Memo. 1990-522; Fulkerson v. Commissioner, T.C. Memo. 1990-276; Blanco Invs. & Land, Ltd. v. Commissioner, T.C. Memo. 1988-175; see also Smith v. Commissioner, T.C. Memo. 1990-430, and cases cited therein. We note that in these cases, our holding that a "proceeding" is

commenced with the filing of a petition is supported by Rule 20(a), which states that "A case is commenced in the Court by filing a petition with the Court to redetermine a deficiency set forth in a notice of deficiency issued by the Commissioner".

In enacting and amending section 7430, Congress has consistently made its legislation applicable to "proceedings commenced" after a particular date. As discussed above, in applying those effective date provisions we have consistently interpreted "proceedings commenced" to mean the date on which the taxpayer's petition was filed. We presume that if our interpretation were not what Congress had intended, Congress would have used different language in drafting the effective date provisions in TBR2.

Additional guidance for deciding when "proceedings" are commenced under TBR2 comes from the meaning of the word "proceeding" as it is used throughout section 7430. In this regard, it is reasonable to assume that Congress intended to give such word the same meaning in the effective date provisions of TBR2 as such word is given elsewhere in section 7430. This provides further support for our conclusion that a "proceeding" is commenced upon the filing of a petition.

For example, section 7430(a) provides:

(a)  IN GENERAL.--In any administrative or court proceeding <u>which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty</u>

under this title, the prevailing party may be awarded a judgment or a settlement for--

> (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

> (2) reasonable litigation costs incurred in connection with such court proceeding. [Emphasis added.]

It is readily apparent that the underscored phrase modifies the word "proceeding" appearing immediately before such phrase. In this context, the word "proceeding" cannot refer to a motion for administration and litigation costs because such a motion is not filed in connection with the determination, collection or refund of any tax, interest, or penalty. Rather, the word "proceeding", as modified by the underscored phrase, must refer to the proceeding that is commenced by the filing of a petition for redetermination.

Likewise, section 7430(c)(1)(B)(iii) uses the word "proceeding" in a context which cannot be limited to the filing of a motion for costs. That section provides in relevant part as follows: "The term 'reasonable litigation costs' includes * * * reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding". (The term "court proceeding" is defined in section 7430(c)(6) to mean "any civil action brought in a court of the United States".) A motion for litigation costs may seek an award for certain expenses connected with the filing and prosecution of the motion, and also for

expenses that have been paid or incurred in connection with a court proceeding before the filing of the motion.  Thus, the "proceeding" referred to in section 7430(c)(1)(B)(iii) necessarily commences before the motion for litigation costs is filed; i.e., with the filing of the petition.

Similarly, section 7430(c)(4)(A) defines the term "prevailing party" to mean--

any party in any proceeding * * *

    *     *     *     *     *     *     *

(ii) which--

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(iii) which meets the * * * [applicable net worth requirements].

For a taxpayer to satisfy those conditions, the taxpayer must necessarily look back to the part of the proceeding that occurred before the filing of the motion for costs.  Thus, the "proceeding" referred to in section 7430(c)(4)(A) necessarily commences before the motion for costs is filed.

Further, section 7430(c)(4)(B)(i) requires that the Commissioner establish that the Commissioner's position was substantially justified "in a proceeding".  The "proceeding" referred to in such section must necessarily commence before the

motion for costs is filed because the substantial justification standard applies to the Commissioner's position in respect of the substantive issues in the case.

Based on the foregoing discussion, we conclude that TBR2 does not apply to a case in this Court unless the taxpayer's petition is filed after July 30, 1996. See Schlicher v. Commissioner, T.C. Memo. 1997-163; Austin v. Commissioner, T.C. Memo. 1997-157. Because petitioner filed its petition on May 16, 1994, before the effective date of TBR2, it follows that section 7430 as amended by TAMRA, and not section 7430 as amended by TBR2, applies in deciding petitioner's motion for costs.

Under section 7430(a) as amended by TAMRA, a taxpayer must satisfy several conjunctive requirements to be deemed a prevailing party. Sec. 7430(c); Polyco, Inc. v. Commissioner, 91 T.C. 963, 964 (1988); see Minahan v. Commissioner, 88 T.C. 492, 497 (1987). The taxpayer must:

(1) Establish that the position of the United States in the civil proceeding was not substantially justified, section 7430(c)(4)(A)(i);

(2) substantially prevail in the litigation, section 7430(c)(4)(A)(ii); and

(3) if the taxpayer is a corporation, meet the net worth and number of employee requirements of 28 U.S.C. sec. 2412(d)(2)(B) (1994), as in effect on the date of the enactment of TRA 1986, sec. 1551(h)(3), 100 Stat. 2085, 2753 (sec. 7430(c)(4)(A)(iii)).

Courts will not award litigation costs under section 7430(a) unless a prevailing party has exhausted the administrative remedies available to such party within the IRS.  Sec. 7430(b)(1).  Moreover, no award for reasonable administrative or litigation costs may be made with respect to any portion of the civil proceeding during which a prevailing party has "unreasonably protracted" such proceeding.  Sec. 7430(b)(4).

Respondent agrees that petitioner has:  (1) Substantially prevailed with respect to the amount in controversy; (2) exhausted the administrative remedies available to it; and (3) shown that the net worth and number of employee requirements have been met.  Respondent contends, however, that respondent's position was substantially justified so that petitioner is not a prevailing party for purposes of section 7430.  In the alternative, respondent asserts that:  (1) Petitioner has unreasonably protracted the Court and administrative proceedings; and (2) the amount of administrative and litigation costs claimed by petitioner is unreasonable.

Petitioner bears the burden of proving that respondent's position in the proceedings was not substantially justified or was unreasonable.  Sec. 7430(c)(4)(A)(i); Rule 232(e); Polyco, Inc. v. Commissioner, supra at 965; Minahan v. Commissioner, supra at 498; DeVenney v. Commissioner, 85 T.C. 927, 928-930 (1985).  The pre-1986 version of section 7430 used the term "unreasonable."  TRA 1986 replaced "unreasonable" with "not

substantially justified".  Powers v. Commissioner, 100 T.C. 457, 471 (1993).  This and other courts have concluded that the substantial justification standard is essentially the prior law's reasonableness standard couched in new language.  Huffman v. Commissioner, 978 F.2d 1139, 1147 n.8 (9th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-144; Powers v. Commissioner, supra at 471; Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987).

We must identify the point at which the United States is first considered to have taken a position, and then decide whether the position taken from that point forward was or was not substantially justified.  The "not substantially justified" standard is applied as of the separate dates that respondent took positions, first in the administrative proceedings and afterwards in the proceedings in this Court.  Sec. 7430(c)(7)(A) and (B); Han v. Commissioner, T.C. Memo. 1993-386.  For purposes of the administrative proceedings in this case, respondent's position is that which was articulated in the notice of deficiency, issued on February 14, 1994.  Sec. 7430(c)(7)(B); see Huffman v. Commissioner, supra at 1143-1147.

For purposes of the court proceedings in this case, respondent's position is that which is set forth in the answer to the petition on June 20, 1994.  Sec. 7430(c)(7)(A); see Huffman v. Commissioner, supra at 1147-1148.  Although ordinarily the reasonableness of each of those positions is considered

separately to allow respondent to change a position previously taken, Huffman v. Commissioner, supra at 1144-1147, it appears in this case that respondent essentially asserted the same position in both the notice of deficiency and the answer.

More specifically, respondent's position was that petitioner had not fully substantiated claimed expenditures, their deductibility, or their business purpose. Therefore, in the answer respondent denied petitioner's allegations that it had paid or incurred all the expenses in dispute as ordinary and necessary business expenses. In respondent's answer, it is further stated that petitioner had provided insufficient information to prove that it was an agent of Ohanesian and the related entities.

The administrative and litigation positions of respondent are substantially justified if they have a reasonable basis in both law and fact. E.g., Anthony v. United States, 987 F.2d 670, 674 (10th Cir. 1993); Norgaard v. Commissioner, 939 F.2d 874, 881 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390; Powers v. Commissioner, supra at 472. For a position to be substantially justified, "substantial evidence" must exist to support it. Pierce v. Underwood, 487 U.S. 552, 564 (1988). "That phrase does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 564-565 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229

(1938)).  Respondent's position may be incorrect but substantially justified "if a reasonable person could think it correct".  Id. at 566 n.2.  Thus, whether respondent acted reasonably in the instant case ultimately turns upon those available facts which formed the basis for the position taken in the notice of deficiency and during the litigation, as well as upon any legal precedents related to the case.  DeVenney v. Commissioner, supra at 930; see Nalle v. Commissioner, 55 F.3d 189, 191-192 (5th Cir. 1995), affg. T.C. Memo. 1994-182; Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990).

The fact that the Commissioner eventually loses or concedes a case does not by itself establish that the position taken is unreasonable.  Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Swanson v. Commissioner, 106 T.C. 76, 94 (1996).  However, it is a factor that may be considered.  Estate of Perry v. Commissioner, supra at 1046; Powers v. Commissioner, supra at 471.

We conclude that petitioner has failed to prove that respondent's position did not have a reasonable basis in fact and law and was not strongly supported by substantial evidence. Although petitioner claimed to be a mere agent or conduit of Ohanesian and SRI in the administrative proceeding before the IRS and in the judicial proceeding before the Tax Court, petitioner had taken the exactly opposite tack in its State court suit.  In

the State court suit, the jury accepted the position of MMC (petitioner here) that it was an independent entity. Moreover, the special verdict found that the written agreements between petitioner and the related entities were valid and enforceable, and that the luxury automobiles and other personal property belonged to petitioner. These findings were wholly inconsistent with petitioner's position in the instant proceedings that the property was purchased by petitioner as an agent for Ohanesian and the related entities.

The doctrine of judicial estoppel precludes a party to a judicial proceeding from taking a position contrary to one it took and persuaded a court to accept in an earlier proceeding. See Huddleston v. Commissioner, 100 T.C. 17, 26-29 (1993). The doctrine of judicial estoppel focuses on the relationship between a party and the courts; it seeks to preserve the integrity of the judicial process by preventing a party from successfully asserting one position before a court and thereafter asserting a contradictory position before the same or another court merely because it is now in that party's interest to do so. Id. at 26. The United States Court of Appeals for the Sixth Circuit has explained that the doctrine of judicial estoppel prevents a party from "abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." Teledyne Indus. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990). In these circumstances it would

have been reasonable for respondent to take the position that petitioner was estopped from arguing that the automobiles and personal property did not belong to it, and that it was not independent. Respondent thus had a reasonable basis in both fact and law for maintaining the position that the expenses deducted by petitioner on account of the automobiles and other personal items were not incurred as agent for Ohanesian and the related entities.

Even if one were to assume that the doctrine of judicial estoppel did not apply in the instant case, respondent was entitled to require from petitioner cogent evidence of the genuineness of an agency relationship. See Commissioner v. Bollinger, 485 U.S. 340, 349-350 (1988), wherein the Supreme Court stated:

> the genuineness of the agency relationship is adequately assured, and tax-avoiding manipulation adequately avoided, when the fact that the corporation is acting as agent for its shareholders with respect to a particular asset is set forth in a written agreement at the time the asset is acquired, the corporation functions as agent and not principal with respect to the asset for all purposes, and the corporation is held out as the agent and not principal in all dealings with third parties * * * [Emphasis added.]

In the instant case, petitioner alleged that an oral agreement to pay personal expenses as an agent of the Ohanesians existed, and that Ohanesian had de facto control over petitioner even though he was not the nominative shareholder. In State court, however, petitioner contended that the relationship

between it and Ohanesian was defined solely by the written agreements, that Margaret was petitioner's sole shareholder, that petitioner was independent, and that any alleged oral agreements did not exist or were unenforceable.  Agreeing with petitioner's position in that case, the jury found in effect that an agency relationship did not exist.  Therefore, based on the facts and related legal precedent, we conclude that respondent reasonably argued that the expenses deducted by petitioner on account of the automobiles and other items were not incurred as agent for Ohanesian and the related entities.

Petitioner alternatively asserts that, even if it were not an agent, respondent unreasonably refused to concede the deductibility of the expenses under section 162 because the State court jury found MMC to be contractually liable to pay the expenses of the Ohanesians.  Based upon this fallacious assumption as to what the jury found (see infra), petitioner argues that, even though petitioner paid what amounted to personal expenses of the Ohanesians, the payments were ordinary and necessary business expenses of petitioner as a result of the oral agreement.  However, the jury verdict makes no mention of any liability to pay expenses of Ohanesian and the related entities, and neither do the written agreements on which that verdict was based.  In fact, the Gehans themselves stated in an

affidavit filed herein that the "issue [of the expenses] was not critical to the [State court] trial".

The jury verdict states that petitioner performed what it was required to do under the contracts; the verdict does not state that everything petitioner did was required by those contracts. Moreover, Mike himself testified that he bought the cars due to the substantial business relationship of the parties and because Ohanesian asked for them, not because he was required to do so. Thus, respondent's administrative and litigation position disputing the deductibility of these expenses under section 162 did not rely on evidence that was scant or unworthy of belief. See VanderPol v. Commissioner, 91 T.C. 367, 370 (1988). To the contrary, it was justified by legal precedent and based upon the Gehans' prior affidavits and testimony. See Nalle v. Commissioner, 55 F.3d at 191-192; Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. at 688.

Furthermore, petitioner has not shown that respondent was not substantially justified in refusing to concede the case with petitioner until the Ohanesians conceded with respect to the Ohanesian-related items. Respondent was caught in a potential "whipsaw" position. A whipsaw occurs when different taxpayers treat the same transaction involving the same items inconsistently, thus creating the possibility that income could go untaxed, or two unrelated parties could deduct the same

expenses on their separate returns.  In such circumstances, respondent was fully entitled to defend against inconsistent results by holding both parties to the transaction liable for the deficiency.  See Powell v. Commissioner, 91 T.C. 673, 679 (1988) ("We recognize that respondent must take alternative or inconsistent positions at times to protect the revenue, but * * * [respondent] may not take such a position without good cause."), revd. on other grounds 891 F.2d 1167 (5th Cir. 1990); Estate of Dooley v. Commissioner, T.C. Memo. 1992-557; Moore v. Commissioner, T.C. Memo. 1989-306.

In addition, where, as here, the evidence in a case consists of the testimony of persons who have maintained inconsistent positions in prior proceedings, respondent also is entitled to maintain inconsistent positions with respect to those parties until this Court can hear the evidence and determine the credibility of the witnesses and the weight to be given their testimony.  See Smith v. Commissioner, T.C. Memo. 1990-430; see also DeVenney v. Commissioner, 85 T.C. at 930; Boyle v. Commissioner, T.C. Memo. 1995-74; Creske v. Commissioner, T.C. Memo. 1990-318, affd. 946 F.2d 43 (7th Cir. 1991); Porter v. Commissioner, T.C. Memo. 1986-465.

In the instant case, in the absence of a settlement, the deductibility of expenses would have hinged on whose testimony the Court found credible.  Thus, we conclude that petitioner has failed to prove that there was not good cause for respondent's

inconsistent positions.  As the Court of Appeals for the Ninth

Circuit has stated in an analogous context where the same

taxpayer receives conflicting notices of deficiency concerning

the same items of income:

> If the Commissioner * * * had chosen incorrectly to
> make only one tax deficiency determination * * * under
> a theory of tax liability reasonably grounded on the
> data procured, conceivably the bar of the statute of
> limitations on assessment would preclude other
> assessments on other determinations predicated on other
> theories of tax liability reasonably grounded on the
> data in * * * [her] possession.  We find no legal or
> logical reason which compels the Commissioner to run
> such risk in the proper performance of * * * [her] duty
> to protect the revenue.  [Revell, Inc. v. Riddell, 273
> F.2d 649, 660 (9th Cir. 1959)].

Petitioner nonetheless asserts that such inconsistent

positions need not have been taken by respondent, and therefore

much litigation expense could have been avoided.  Petitioner

avers that it told respondent that, rather than moving to

consolidate petitioner's case with that of the Ohanesians,

respondent should have urged the Court to wait to decide

petitioner's case until after the Ohanesians' case was decided.

However, petitioner ignores that much of the litigation cost was

run up by its own intransigence.  The IRS had asked petitioner to

sign a Form 872, Consent to Extend the Time to Assess Tax, as

early as December 9, 1993, but was rebuffed, and so it was forced

to prepare the notice of deficiency to defend against

inconsistent results.  Petitioner also disregards the unnecessary

expenditure of judicial time and resources that two separate

trials involving substantially the same evidence would have entailed.

Petitioner has not proven that respondent was not substantially justified in maintaining respondent's position against petitioner. In a case such as this, respondent is charged with the difficult task of protecting the fisc. Petitioner and Ohanesian asserted fundamentally conflicting versions of the nature of their relationship and the payments of the Ohanesian-related items. Based on such evidence, and the fact that Ohanesian and petitioner both reversed the positions they took in the State court case, respondent acted reasonably in maintaining the position taken in petitioner's case until the Ohanesians conceded with respect to those items.

Petitioner lamely asserts that respondent's agent took an instant dislike to the Gehans which clouded his judgment as to the strength of petitioner's position. However, we find no indication in the record that respondent sought to extract unjustified concessions from petitioner, or that respondent pursued the litigation to harass or embarrass petitioner, and petitioner has pointed to none. See Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987); Wickert v. Commissioner, T.C. Memo. 1986-277, affd. 842 F.2d 1005 (8th Cir. 1988).

Since we hold that petitioner has not proven that respondent's position was not substantially justified with respect to the deductibility of the Ohanesian-related items, we

need not address whether the costs claimed by petitioner are reasonable or whether petitioner unreasonably protracted the administrative and litigation proceedings.

For all of the above reasons, we hold that petitioner is not entitled to administrative and litigation costs pursuant to section 7430.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.