T.C. Memo. 2002-253

UNITED STATES TAX COURT

CHARLES B. OWENS AND SALLY L. OWENS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 672-01.                    Filed October 3, 2002.

     R determined a deficiency in tax, and an
accompanying accuracy-related penalty, attributable to
Ps' failure to account for discharge of indebtedness
income in 1994.  Ps filed a petition for
redetermination, and R subsequently conceded the entire
case.  Ps seek recovery of administrative and
litigation costs in the amount of $10,978.74 pursuant
to sec. 7430, I.R.C.

     1.  <u>Held</u>:  R's position with respect to the
discharge of indebtedness issue was substantially
justified within the meaning of sec. 7430(c)(4)(B)(i),
I.R.C.

     2.  <u>Held</u>, <u>further</u>, R's position with respect to
the penalty issue was not substantially justified
within the meaning of sec. 7430(c)(4)(B)(i), I.R.C.

     3.  <u>Held</u>, <u>further</u>, Ps are entitled to recover
costs in the amount of $1,449.58.

John A. Townsend, for petitioners.

Susan M. Pinner, for respondent.


MEMORANDUM OPINION

HALPERN, Judge:  This case is before the Court on petitioners' motion for an award of administrative and litigation costs pursuant to section 7430 and Rules 230 through 233 (the motion).  Respondent objects.  All section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Petitioners seek to recover costs in the amount of $10,978.74 incurred in connection with respondent's determination of a deficiency in tax with respect to their taxable (calendar) year 1996.  Neither party requested an evidentiary hearing, and we conclude that such a hearing is not necessary for the proper disposition of the motion.  See Rule 232(a)(2).  The primary issue for decision is whether respondent's positions in the administrative and judicial proceedings involved here were substantially justified within the meaning of section

7430(c)(4)(B)(i).  Respondent bears the burden of proof on this issue.  Sec. 7430(c)(4)(B).[1]  Because the parties appear to agree on the underlying facts, there are no factual disputes to resolve, and we shall proceed on the basis of the parties' submissions.

## Factual and Procedural Background

### The Loan

In 1986 petitioner Charles B. Owens (petitioner) borrowed $596,078 from First RepublicBank (the loan).  The loan matured in 1989.  Upon the failure of First RepublicBank, the loan became the property of the Federal Deposit Insurance Corporation (FDIC).  Petitioner never made any payments on the loan, and the FDIC issued him an Internal Revenue Service Form 1099-C, Cancellation of Debt 1994 (the Form 1099-C) with respect thereto.  The Form 1099-C specifies the date of cancellation of the loan (October 6, 1994), the total amount canceled ($1,338,924.32), and the portion of the total amount canceled consisting of interest ($742,846.32).

---

[1]  Sec. 7430(c)(4)(B) applies to proceedings commenced after July 30, 1996.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 701(d), 110 Stat. 1452, 1463 (1996).  While we have yet to decide the issue of when administrative (as opposed to judicial) proceedings are commenced for purposes of that effective date, see Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 438 (1997), respondent does not dispute petitioners' assertion that respondent bears the burden of proof on the "substantial justification" issue with respect to all of the costs at issue. We therefore proceed under the assumption that petitioners are correct in that regard.

Petitioners' Returns

Petitioners made a joint return of Federal income tax for 1994 by filing a Form 1040, U.S. Individual Income Tax Return (the 1994 return). On line 21 of the 1994 return ("Other income"), petitioners reported a negative amount, $354,495. In a statement supporting that entry, petitioners, among other things, (1) reported $1,338,924 as an item of income, labeled "FDIC-SOUTHWEST SERVICE CENTER-Form 1099-C", (2) subtracted an equal amount, labeled "ERRONEOUS 1099-C – DEBT NOT DISCHARGED", and (3) subtracted $390,173 as a net operating loss (NOL) deduction. That NOL deduction consisted of NOL carryovers from 1986, 1990, and 1993.

Petitioners made a joint return of Federal income tax for 1996 by filing a Form 1040, U.S. Individual Income Tax Return (the 1996 return). On line 21 of the 1996 return ("Other income"), petitioners reported a negative amount, $118,961. In a statement supporting that entry, petitioners, among other things, subtracted $137,033 as an NOL deduction. That NOL deduction consisted of NOL carryovers from 1990 and 1993.

Respondent's Examination

Respondent undertook an examination of the 1994 return. During the course of that examination, respondent summoned the FDIC to produce all documentation relating to the loan. The ensuing FDIC correspondence to respondent (the FDIC

correspondence) includes a copy of a "Dormant Account Status Approval Form" with respect to the loan, which shows an effective date of October 6, 1994. The form contains the following statement: "This memorandum is a request for Authorization to write off the remaining balance of $1,338,924.32".[2] Under the heading "1099 Will be Generated", the preparer marked the space adjacent to the entry "Not Economic to Pursue and Unsalable". The form also contains a brief narrative describing the loan and the status of collection efforts with respect thereto. The narrative references a July 1994 asset search that revealed no assets available for repayment of the loan. The narrative concludes: "It does not appear to be cost effective to pursue a collection lawsuit against the obligor." The form bears the stamp "REQUEST APPROVED BY OVERSIGHT COMMITTEE SPECIAL ASSET BANK" with a handwritten date of October 20, 1994.

The FDIC correspondence also includes two pieces of correspondence between petitioner and Wayne D. Eckstine, a principal of AMRESCO.[3] In a letter to Mr. Eckstine dated November 1, 1994 (the November 1 letter), petitioner reiterates his reluctance to provide current financial information in light of the adverse effect such information may have on certain other

---

[2] The form lists principal of $596,078 and interest of $742,846.32.

[3] AMRESCO apparently managed certain loan accounts on behalf of the FDIC.

settlements he had reached with creditors.  The November 1 letter

concludes with the following language:

> Further, as I explained at our meeting, the real point
> is that I have a huge negative net worth under either
> scenario.  So my ability to pay any amount is
> questionable because of the mountain of debt hanging
> over me from the past, and the fact that I have no
> permanent source of present income, nor assets that
> have any equity that isn't already pledged to the hilt.
> Basically, I am now and have always been ready to
> resolve this matter by meeting with the appropriate
> officers and agreeing on a resolution.  I'll be glad to
> answer any questions openly as I did at our meeting.
> So please let me hear from you to discuss how we can
> fully and finally resolve this situation.

Mr. Eckstine responded to the November 1 letter by letter

dated November 7, 1994 (the November 7 letter).  The body of the

November 7 letter is as follows:

> This letter is in response to your inquiry of
> November 1, 1994 with respect to our previous request
> to provide current financial information and a current
> Affidavit of Financial Condition.  I appreciate your
> concern about explaining the complexities of other
> settlements that you may have ongoing with other
> lenders.  I would suggest that you attach any and all
> pertinent data to any current financial statements to
> supplement the information needed to clarify your
> presentation.
>
> All requests to settle for less than the full amount
> owing on any debt must be made in writing and
> accompanied by the information previously discussed.
> Until this information is received, we are unable to
> answer specific questions or make any decisions
> regarding a payoff of your indebtedness.  Should there
> be a change in our policies and procedures and our
> ability to negotiate a settlement otherwise, you will
> be contacted.

Petitioners do not allege, and there is no evidence to suggest, that the FDIC contacted them regarding the loan after November 7, 1994.

Respondent issued a "30-day letter" to petitioners for taxable years 1994 and 1996. In that letter, respondent proposed certain adjustments based on his conclusion that petitioners had realized income from the discharge of indebtedness in 1994 equal to the principal amount of the loan ($596,078).[4] Specifically, because petitioners were insolvent when the alleged discharge occurred, respondent proposed to reduce to zero petitioners' unused 1994 NOL deduction (the unused 1994 NOL deduction) of $137,033 pursuant to section 108(b)(2)(A). Since petitioners' 1996 NOL deduction derived entirely from the unused 1994 NOL deduction, the proposed elimination of the unused 1994 NOL deduction had the effect of reducing petitioners' 1996 NOL deduction to zero. That elimination of petitioners' 1996 NOL deduction had the effect of increasing petitioners' 1996 tax by $36,042 (after an adjustment for a reduction in itemized deductions pursuant to section 68). Respondent also proposed to impose an accuracy-related penalty for 1996 of $7,208.40.

---

[4] In general, a cash basis debtor does not realize discharge of indebtedness income upon the cancellation of an accrued but unpaid obligation to pay deductible interest. See sec. 108(e)(2).

Petitioners submitted a written protest in response to respondent's 30-day letter. Thereafter, petitioners and respondent were unable to resolve the issues set forth in respondent's 30-day letter. By letter dated November 2, 2000, respondent determined a deficiency in petitioners' 1996 income tax liability of $36,048 and an accuracy-related penalty under section 6662 (for negligence or disregard of rules or regulations) of $7,209.60.[5]

On January 16, 2001, petitioners filed their petition assigning error to respondent's determinations.[6] On March 19, 2001, respondent filed his answer denying that he had erred. The case was set for trial at the Court's trial session commencing on December 3, 2001, in Houston, Texas. Prior to that date, respondent communicated to petitioners his intent to concede the case. When the case was called from the trial calendar, the parties filed a Stipulation of Settled Issues, pursuant to which (1) respondent conceded the proposed income tax deficiency and penalty, and (2) petitioners reserved their right to file a motion for costs under section 7430.

---

[5] The small differences between the deficiency and penalty figures in the 30-day letter as compared to those in the notice of deficiency appear to be due to the correction of mathematical errors.

[6] Petitioners resided in San Antonio, Tex., when they filed their petition in this case.

## Discussion

I. Overview of Section 7430

   A. Relevant Provisions

Section 7430(a) provides that a taxpayer may recover certain costs incurred in connection with any tax proceeding (administrative or judicial) against the United States if the taxpayer is the prevailing party in such proceeding(s). Section 7430(c)(4)(B) provides that a taxpayer shall not be treated as the prevailing party in any such proceeding if the United States establishes that its position in the proceeding was substantially justified. In his objection to the motion, respondent seeks to establish that his position in the proceedings in question was substantially justified.

   B. Position of the United States

      1. Issue-by-Issue Analysis

The underlying controversy between the parties presented two distinct issues: (1) Whether petitioners were liable for the income tax deficiency of $36,048, and (2) whether petitioners were liable for the section 6662(a) penalty in the amount of $7,209.60. We ascertain the reasonableness of respondent's position with respect to each issue. E.g., Foothill Ranch Co. Pship. v. Commissioner, 110 T.C. 94, 97 (1998); Mitchell v. Commissioner, T.C. Memo. 2000-145 (separate analysis of Commissioner's position with respect to the income tax issue and

the penalty issue, respectively); see also section 301.7430-5(c)(2), Proced. & Admin. Regs. (governing administrative awards of costs).

## 2. Administrative and Litigating Positions

In the context of a claim for administrative costs in a deficiency proceeding, the "position of the United States" with respect to any issue is generally that set forth in the Commissioner's notice of deficiency. See sec. 7430(c)(7)(B)(ii); see also, e.g., Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997). In the context of a claim for litigation costs, the position of the United States with respect to any issue is that set forth in the Commissioner's answer in the judicial proceeding. E.g., Maggie Mgmt. Co. v. Commissioner, supra at 442; see sec. 7430(c)(7)(A). Although we normally evaluate the merits of those positions separately when a taxpayer seeks recovery of both administrative and litigation costs, there is no need to do so when, as is the case with each issue here, such positions are identical and there is no indication that any factual or legal developments occurred during the interim between the issuance of the notice of deficiency and the filing of the answer that would render the Commissioner's position any more or less justified. E.g., Tammaro v. Commissioner, T.C. Memo. 2000-243. Accordingly, we do not distinguish between respondent's administrative positions and his litigating positions.

C. <u>Substantial Justification</u>

An administrative or litigating position of the United States is substantially justified if it has a reasonable basis in both law and fact.  E.g., <u>Maggie Mgmt. Co. v. Commissioner</u>, <u>supra</u> at 443.  We determine the reasonableness of respondent's positions on the two issues in this case based upon the facts available to respondent at the time he took the positions and the controlling legal precedent at such time.  <u>Id.</u>  The fact that respondent conceded both issues does not, by itself, establish that his positions with respect thereto were unreasonable.  <u>Id.</u> However, it is a factor that may be considered.  <u>Id.</u>

II. <u>Application of the "Substantially Justified" Standard</u>

A. <u>The Discharge of Indebtedness Issue</u>

The determination of whether a discharge of indebtedness has occurred for tax purposes is extremely fact specific, often turning on the subjective intent of the creditor as manifested by an objectively identifiable event.[7]  In the instant case, the

---

[7] See, e.g., <u>Friedman v. Commissioner</u>, T.C. Memo. 1998-196 (finding "no identifying event or forgiveness on the part of the creditors" that would indicate a discharge of indebtedness during the year in question), affd. 216 F.3d 537 (6th Cir. 2000); cf. sec. 1.6050P-1(b)(1) and (2)(i)(G), Income Tax Regs. (for information reporting purposes, debt is discharged upon the occurrence of any of the "identifiable events" specified in the regulation, including a discharge pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge the debt).  See generally <u>Cozzi v. Commissioner</u>, 88 T.C. 435, 445-448 (1987) (general discussion of "identifiable event" standard).

FDIC's issuance and filing of the Form 1099-C with respect to the loan, while not dispositive, is certainly an identifiable event that is evidence of an intention to cancel the loan, as is the FDIC's reclassification of the loan as a "dormant account" pursuant to established internal procedures.[8]  The only evidence that is perhaps inconsistent with an intention on the part of the FDIC to cancel the loan in 1994 is the November 7, 1994, letter from Mr. Eckstine to petitioner.  Given the prevailing "identifiable event" standard and the state of the evidence, we conclude that respondent's position with respect to the discharge of indebtedness issue had a reasonable basis in both law and fact and therefore was substantially justified within the meaning of section 7430(c)(4)(B)(i).

Petitioners cite Portillo v. Commissioner, 988 F.2d 27 (5th Cir. 1993), revg. T.C. Memo. 1992-99, in support of their argument that respondent's position with respect to the discharge of indebtedness issue was not substantially justified.  In Portillo, the Court of Appeals for the Fifth Circuit reversed a Memorandum Opinion of this Court that denied the taxpayers' motion for litigation costs.  In so doing, the Court of Appeals

---

[8]  While the term "dormant" does not necessarily signify an intent on the part of the FDIC to cancel the loan, the language of the FDIC's "Dormant Account Status Approval Form" for the loan in some respects evidences such an intent (e.g., "This memorandum is a request for Authorization to write off the remaining balance").

held that the Commissioner's reliance on an "unsubstantiated and unreliable" Form 1099 to assert a deficiency against the alleged payee was unreasonable.  Id. at 29.[9]  In the instant case, the Form 1099-C, upon which respondent relied, was supported by the FDIC's internal records.  Portillo is therefore distinguishable.

Petitioners also suggest that, because respondent conceded the case without (as petitioners allege and respondent, in his objection to the motion, appears to confirm) having uncovered any new factual information that would cause respondent to reconsider his position, such concession is indicative of the unreasonableness of respondent's position in his notice of deficiency and answer.  We acknowledge that there may be circumstances in which the absence of new information would weigh against the Commissioner in the context of a concession.  See, e.g., Lennox v. Commissioner, 998 F.2d 244, 248 (5th Cir. 1993)(rejecting the implication that the Commissioner had obtained new information between the date of the notice of deficiency and the date of the concession), revg. T.C. Memo. 1992-382.  However, it is just as clear that the Commissioner's position may be substantially justified notwithstanding his

---

[9]  The Court of Appeals for the Fifth Circuit had previously reversed the portion of a Memorandum Opinion of this Court that upheld the Commissioner's proposed deficiency attributable to the income reported on the Form 1099.  Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68.

subsequent abandonment of that position without any additional factual development.  For example, in Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 689-690 (1990), the Commissioner acknowledged "that his post-trial concession was not based upon new facts presented at trial, but rather upon a reconsideration of his basic legal position", and we agreed that such concession "was based on an abandonment of his legal position."  We nevertheless found the Commissioner's position to be reasonable.  Id. at 694-695.

This Court has observed:  "The fact that respondent's counsel ultimately [decides] to concede the case may reflect a consideration of a variety of factors--including litigation risks--which earlier were not considered or which were not weighed as heavily by respondent."  Estes v. Commissioner, T.C. Memo. 2000-96.  Such appears to be the case here.  We conclude that despite respondent's concession of the underlying dispute between the parties, his position with respect to the discharge of indebtedness issue was reasonable.

B.   The Penalty Issue

As noted above, respondent asserted that petitioners were liable for the section 6662 accuracy-related penalty due to petitioners' negligence or disregard of rules or regulations. Section 6662(c) provides that, for purposes of section 6662, the term "negligence" includes any failure to make a reasonable

attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Under section 6664(c), the accuracy-related penalty of section 6662 does not apply to the extent there is reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment.

Bearing in mind that we are evaluating the reasonableness of respondent's assertion of the penalty,[10] rather than the applicability of the penalty itself, we nonetheless conclude that respondent's position on the penalty issue was not reasonable. As discussed above, the determination of whether a discharge of indebtedness has occurred for tax purposes is extremely fact specific.  When respondent issued his notice of deficiency (and again when he filed his answer in the judicial proceeding), he was aware of the conflicting evidence with respect to the discharge of indebtedness issue.  While we have found that such conflicting evidence did not render unreasonable respondent's decision to continue to pursue that issue, we conclude otherwise with regard to respondent's decision to pursue the negligence penalty.  Cf. <u>Mitchell v. Commissioner</u>, T.C. Memo. 2000-145

---

[10]  We assume for these purposes that respondent asserted the penalty on the ground that petitioners were negligent.  The alternative standard (i.e., disregard of rules or regulations) contemplates a specific statutory or administrative rule that is contrary to the taxpayer's reporting position, see sec. 1.6662-3(b)(2), Income Tax Regs., a circumstance which does not appear to be present here.

(Commissioner's position regarding "tax home" issue was substantially justified, but his assertion of accuracy-related penalty was not). Suffice it to say that a close case is often indicative of reasonableness and good faith on both sides of the dispute. We conclude that respondent's assertion that petitioners' position on the discharge of indebtedness issue was not only incorrect, but unreasonable as well, was itself unreasonable.[11]

## III. Amount of Recoverable Costs

### A. Eligible Costs

Petitioners seek costs in the amount of $10,978.74. However, petitioners' submission of costs includes 18.25 hours of services performed by C.P.A. Nancy J. Critz prior to January 19, 1999. The cost of those services is not recoverable under

---

[11] Sec. 1.6662-3(b)(1)(i), Income Tax Regs., provides that negligence is "strongly indicated" where a taxpayer omits income reported on an information return (such as a Form 1099). While, ordinarily, that might be the case (which in turn would tend to support a finding that the Commissioner acted reasonably in asserting the negligence penalty under such circumstances), such principle presupposes that, unlike the instant case, the correctness of the information return in question is not in dispute. Cf. Portillo v. Commissioner, 988 F.2d 27 (5th Cir. 1993)(Commissioner's reliance on uncorroborated Form 1099 not reasonable under the circumstances; no separate discussion of negligence penalty in this context), revg. T.C. Memo. 1992-99; Eifert v. Commissioner, T.C. Memo. 1997-214 (Commissioner's reliance on FDIC's erroneous Form 1099-G, reporting discharge of indebtedness income, not reasonable under the circumstances; no negligence penalty asserted).

section 7430.[12]  Accordingly, we first reduce petitioners' claim by $2,281.25 (18.25 hours multiplied by the recovery rate of $125 per hour claimed by petitioners), leaving potentially recoverable costs in the amount of $8,697.49.

B.  <u>Allocation of Costs Between the Two Issues</u>

Petitioners have not allocated their costs between the discharge of indebtedness issue and the penalty issue, nor would we expect them to, given the interrelatedness of the two issues. We therefore allocate petitioners' remaining eligible costs between the two issues based on the relative dollar amounts involved.  See, e.g., <u>Galedrige Constr., Inc. v. Commissioner</u>, T.C. Memo. 1997-485 (25 percent of costs allocated to issue regarding 25 percent substantial understatement penalty).[13]

_____

[12]  Sec. 3101(b) of the Internal Revenue Service Restructuring and Reform Act of 1998 (1998 Act), Pub. L. 105-206, 112 Stat. 728, pushed back the "start date" for recoverable administrative costs in a deficiency proceeding from the date of the notice of deficiency to the earlier date of the Commissioner's "30-day letter."  That amendment applies to costs incurred after Jan. 18, 1999, the date that is 180 days after the date of enactment of the 1998 Act.  1998 Act sec. 3101(g), 112 Stat. 729.

[13]  Because petitioners did not separately address the reasonableness of respondent's position with respect to the discharge of indebtedness issue and the penalty issue, respectively, we do not think it appropriate to allocate petitioners' costs between those issues on a pro rata basis (i.e., 50 percent to each issue).  Cf. <u>Heasley v. Commissioner</u>, T.C. Memo. 1991-189, affd. in part and revd. in part 967 F.2d 116 (5th Cir. 1992) (taxpayers challenged the reasonableness of the Commissioner's position with respect to four separate penalties; award of costs proportionate to number of issues on which

(continued...)

Since the penalty equaled 20 percent of the alleged underpayment attributable to the discharge of indebtedness issue, the ratio of nonrecoverable costs to recoverable costs is 5:1. Applying that ratio to petitioners' eligible costs of $8,697.49, we determine that petitioners are entitled to recover $1,449.58.

IV. <u>Summary</u>

We find that (1) respondent's position with respect to the discharge of indebtedness issue was substantially justified, (2) respondent's position with respect to the imposition of the accuracy-related penalty was not substantially justified, and (3) the amount of petitioners' recoverable costs allocable to the penalty issue is $1,449.58.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

---

[13](...continued)
taxpayers prevailed in that endeavor).