T.C. Memo. 2000-387

UNITED STATES TAX COURT

MICHELE D. LIVINGSTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15040-97.                    Filed December 20, 2000.

Howard B. Teller, for petitioner.

Richard A. Stone, for respondent.


MEMORANDUM OPINION

THORNTON, Judge:  This case is before the Court on
petitioner's motion for litigation and administrative costs
pursuant to section 7430 and Rule 231.[1]

_____

[1]  References to sec. 7430 in this opinion are to that
section as amended by the Taxpayer Bill of Rights 2, Pub. L. 104-
168, sec. 701, 110 Stat. 1452, 1463 (1996), effective with
respect to proceedings commenced after July 30, 1996.  The 1996
(continued...)

Neither party has requested an evidentiary hearing on petitioner's motion, and we conclude that none is necessary. See Rule 232(a)(1) and (2). We base our decision on the pleadings, petitioner's motion for litigation and administrative costs, respondent's objection to that motion, the supporting memoranda and affidavits, and the record in this case.

The full findings of fact underlying the substantive dispute between the parties appear in the Court's opinion, Livingston v. Commissioner, T.C. Memo. 2000-121. We repeat only the facts necessary to clarify our discussion.

Background

For taxable years 1989 and 1990, petitioner and Theron Livingston (Theron) were married. For taxable year 1989, petitioner filed a separate individual Federal income tax return. Theron filed no 1989 Federal income tax return. For taxable year 1990, petitioner and Theron filed a joint individual Federal income tax return.

---

[1](...continued)
amendment shifted to the Commissioner the burden of proving that the position of the United States was substantially justified. See sec. 7430(c)(4)(B).

A judicial proceeding is commenced in this Court with the filing of a petition. See Rule 20(a). Petitioner filed her petition on July 14, 1997. Accordingly, the 1996 amendments to sec. 7430 apply here. See Maggie Management Co. v. Commissioner, 108 T.C. 430 (1997). Other section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

In 1994, Theron pleaded guilty to income tax evasion pursuant to section 7201 for taxable year 1990 and to a 1993 offense for distribution of cocaine base. As part of the criminal proceeding, respondent reconstructed Theron's income for taxable years 1989, 1990, and 1991 using a net worth analysis. In the plea agreement, Theron admitted, consistent with respondent's net worth analysis, that in 1990 he had additional unreported income of $63,610.

After Theron's plea agreement, respondent conducted a civil examination of Theron's 1989 Federal income tax return and petitioner's and Theron's 1990 joint Federal income tax return. As part of this examination, respondent's revenue agent requested petitioner and Theron, who was then in prison, each to provide documentation such as income records and expense records. Neither petitioner nor Theron complied with the request.

Relying upon the income reconstructions prepared in the criminal investigation, with certain modifications, respondent determined a $3,424 deficiency in Theron's 1989 Federal income tax liability and a $24,676 deficiency in petitioner's and Theron's 1990 joint Federal income tax liability. For taxable year 1990, respondent also determined that Theron was liable for an $18,507 addition to tax for fraud. On April 15, 1997, respondent issued a notice of deficiency reflecting these determinations.

After the notice of deficiency was issued, respondent assigned the case to an IRS Appeals officer. Petitioner's counsel had several telephone discussions with respondent's Appeals officer but never met with him in person. Petitioner's counsel asked the Appeals officer to concede that petitioner was entitled to relief from joint liability pursuant to former section 6013(e) but presented no information, documentation, or other evidence to explain why petitioner qualified for this relief. Petitioner's counsel also requested all the information in respondent's administrative files regarding the criminal net worth computations. The Appeals officer denied this request on the ground that the information sought was grand jury information that was not available to the Appeals officer. Petitioner's counsel then insisted that the case be sent to respondent's district counsel.

In her petition to this Court, petitioner disputed respondent's determination of the 1990 deficiency and sought relief from joint liability under former section 6013(e). Theron filed a separate petition for taxable years 1989 and 1990. The cases were consolidated for trial, briefing, and opinion.

On May 21, 1998, a trial was held in the consolidated cases. On July 22, 1998--before opening briefs were due--section 6015 was enacted, replacing former section 6013(e), which was repealed generally as of the same date. See Internal Revenue Service

Restructuring and Reform Act of 1998 (RRA), Pub. L. 105-206, sec. 3201(a), (e)(1), 112 Stat. 734. On August 3 and 18, 1998, petitioner filed administrative elections for relief from joint liability pursuant to section 6015(b) and (c), respectively. The Court suspended the briefing schedule to provide respondent an opportunity to respond to petitioner's administrative elections.

On January 13, 1999, respondent notified petitioner that she is entitled to relief from joint liability pursuant to section 6015(c) and mailed her a proposed decision representing a concession that she has no liability for any amount of the deficiency in dispute. Respondent made no determination whether petitioner qualified for relief under section 6015(b).

On January 25, 1999, petitioner advised the Court that she agreed with respondent's concession of the entire deficiency against her pursuant to section 6015(c) but that she would not agree to respondent's proposed decision unless respondent also responded to her election under section 6015(b).

With leave of the Court, on March 17, 1999, petitioner filed an amendment to petition, in which she requested the Court to require respondent to make a determination as to her eligibility for relief from joint liability under former section 6013(e) and section 6015(b). On March 26, 1999, respondent filed an answer to petitioner's amendment to petition. The Court then directed the parties to file opening and answering briefs.

In <u>Livingston v. Commissioner</u>, T.C. Memo. 2000-121, this Court held that because of infirmities in respondent's net worth computations, respondent's determination of a 1989 deficiency for Theron was not sustained. For taxable year 1990, this Court held that Theron's admission of unreported income was strong evidence of the prima facie validity of respondent's net worth computations but that the evidence offered at trial established that the 1990 deficiency was less than that determined in respondent's notice of deficiency. We also held that, with regard to petitioner's request for a determination as to her eligibility for relief from joint liability pursuant to section 6015(b), respondent's concession that pursuant to section 6015(c) petitioner has no liability for any amount of deficiency for taxable year 1990 had resolved the controversy between petitioner and respondent that was before us. We declined to express an advisory opinion as to whether petitioner would have qualified for relief under section 6015(b).[2]

Discussion

Section 7430(a) permits the award of reasonable administrative and litigation costs to a taxpayer in an administrative or court proceeding brought against the United States in connection with the determination of any tax, interest,

---

[2] We determined that petitioner had conceded the issue of her entitlement to relief pursuant to former section 6013(e).

or penalty under the Internal Revenue Code. An award of reasonable administrative or litigation costs may be made where the taxpayer is the prevailing party and did not unreasonably protract the administrative or judicial proceedings. See sec. 7430(a) and (b)(3). Litigation costs may be awarded only if the taxpayer exhausted available administrative remedies. See sec. 7430(b)(1).

To be a prevailing party, a taxpayer must: (1) Substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented, and (2) meet certain net worth requirements. See sec. 7430(c)(4)(A)(i) and (ii).

Respondent concedes that petitioner substantially prevailed and meets the net worth requirements. Respondent argues, however, that petitioner is not the prevailing party because respondent was substantially justified in maintaining his position in the administrative and judicial proceedings. Respondent also argues that petitioner did not exhaust all administrative remedies, that petitioner unreasonably protracted the proceedings, and that the fees requested are unreasonable.

As a general rule, the taxpayer in an administrative or court proceeding is not treated as the prevailing party if respondent establishes that the position of the United States was substantially justified. See sec. 7430(c)(4)(B)(i). Pursuant to

section 7430(c)(7), the term "position of the United States" means:

> (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and
> (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of--
> > (i) the date of the receipt by the taxpayer of the notice of decision of the Internal Revenue Service Office of Appeals, or
> > (ii) the date of the notice of deficiency.

Here, the record does not reflect that the Appeals Office ever issued a notice of decision prior to the issuance of the notice of deficiency; accordingly, respondent is considered to have taken a position in the administrative proceedings on the date the notice of deficiency was issued. Respondent is considered to have taken a position in the judicial proceedings herein when the answer was filed. See Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part and revg. in part on another ground T.C. Memo. 1991-144. Although the positions respondent takes in the administrative and judicial proceedings are normally considered separately, to permit consideration of changes in respondent's position in the two proceedings, see Austin v. Commissioner, T.C. Memo. 1997-157, here the distinction is of little consequence, as respondent appears to have taken the same position in both the notice of deficiency and in the answer.

The United States' position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). To be substantially justified, the United States' position need not be correct but need only have a "reasonable basis both in law and fact." Id.; see also Wasie v. Commissioner, 86 T.C. 962, 969 (1986). Whether respondent's position was substantially justified depends upon the reasonableness of the position, based on all the facts known to the respondent when he took positions in the administrative and judicial proceedings. See Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997); DeVenney v. Commissioner, 85 T.C. 927, 931 (1985). The fact that respondent eventually loses or concedes a case does not establish that respondent's position was unreasonable. See Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner, supra at 969. The burden of proof is on respondent to show that the position of the United States was substantially justified. See sec. 7430(c)(4)(B)(i); Rule 232(e).

The substantive issues in the underlying case were: (1) Whether petitioner and Theron were jointly liable for the 1990 deficiency as determined in the notice of deficiency, and (2) whether petitioner qualified for relief from joint liability pursuant to former section 6013(e) or section 6015.

1. Respondent's Justification as to the Asserted 1990 Deficiency

Respondent had a reasonable basis in law and fact for concluding that petitioner and Theron were jointly liable for a deficiency as determined in the notice of deficiency for taxable year 1990. Theron had admitted that he had unreported income in 1990 as determined in the criminal net worth computation. As we stated in Livingston v. Commissioner, T.C. Memo. 2000-121, Theron's admission was strong evidence of the validity of the 1990 criminal net worth computation and consequently of the 1990 civil net worth computation, upon which the 1990 deficiency determination was predicated.

2. Respondent's Justification as to Denial of Petitioner's Claim for Relief From Joint Liability

   a. Period Before Repeal of Former Section 6013(e)

As described above, during the administrative proceedings and throughout the trial of this case, the applicable statutory provision for relief from joint liability was former section 6013(e), which was repealed shortly after the trial and replaced by section 6015, effective July 22, 1998. See RRA sec. 3201(a), (e)(1). Under former section 6013(e), to qualify for relief, a taxpayer had to establish that: (1) A joint Federal income tax return was filed; (2) there was a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not

know, and had no reason to know, of the substantial understatement; and (4) taking into account all the facts and circumstances, it would be inequitable to hold the spouse seeking relief liable for the deficiency attributable to such substantial understatement. Of particular significance here were items (3) and (4) above.

During the civil examination, petitioner refused to provide requested records to respondent's revenue agent. Although petitioner asserted her entitlement to relief from joint liability at some point in the administrative proceedings, she never provided any corroborating evidence to justify her claim; indeed, it is unclear from the record that she ever provided any explanation why she believed she merited relief from joint liability.[3] Similarly, during trial preparation she provided no significant support for her position that she was entitled to innocent spouse relief.

Whether a spouse is entitled to relief from joint liability depends upon an examination of all the facts and circumstances,

---

[3] It is unclear whether petitioner ever asserted a claim for relief from joint liability during the civil examination. At trial, petitioner produced an executed Form 8379, Injured Spouse Claim and Allocation, dated Nov. 29, 1996. Petitioner offered no documentation, however, that the form was ever transmitted to respondent. Respondent's agent testified that she never received the form. Even if we were to assume, arguendo, that petitioner did submit the Form 8379 to respondent, the Form 8379 offered into evidence includes no explanation as to why petitioner believed she qualified for relief from joint liability.

including the credibility of the spouse seeking relief.  See Estate of Sell v. Commissioner, T.C. Memo. 1993-325; Brailsford v. Commissioner, T.C. Memo. 1991-639.  Because the burden is on the taxpayer to establish entitlement to relief from joint liability, see Adams v. Commissioner, 60 T.C. 300, 303 (1973), respondent does not act unreasonably in requiring better proof than mere assertions of entitlement to relief without independent corroboration, see Sliwa v. Commissioner, 839 F.2d 602, 608 (9th Cir. 1988).

The limited information available to respondent's Appeals officer and district counsel when the notice of deficiency was issued and when the answer was filed included information that petitioner had failed to cooperate with requests for information, that petitioner's and Theron's expenses were greater than the income reported on their 1990 return, that petitioner was living in the house where drugs were discovered upon Theron's arrest in 1991, and that petitioner remained married to Theron.  On the basis of this information, respondent would have been reasonable in concluding that petitioner may have known or have had reason to know of the unreported income, and thus would not be entitled to relief from joint liability under former section 6013(e). Indeed, even after submission of all the evidence by both parties at trial, it was not a foregone conclusion that respondent's asserted deficiency for 1990 would not be sustained--a

determination that, if the parties had not settled the issue, would have been made by the Court only after carefully weighing all the evidence and assessing the credibility of several key witnesses--or that petitioner would have prevailed on her claim for relief from joint liability under former section 6013(e)--an issue that we need not reach, given respondent's concession that petitioner is entitled to full relief from joint liability pursuant to section 6015(c).

b.  Period After Enactment of Section 6015

Effective July 22, 1998, former section 6013(e) was repealed and replaced, with retroactive effect, by new section 6015.  See RRA sec. 3201(a), (e)(1), 112 Stat. 740.  In Corson v. Commissioner, 114 T.C. 354, 359-360 (2000), we summarized the effect of new section 6015 as follows:

> Whereas section 6013(e) had offered only a single avenue of relief, based on a spouse's lack of knowledge or reason to know of a substantial understatement, section 6015 authorizes three types of relief.  Subsection (b) provides a form of relief available to all joint filers and similar to, but less restrictive than, that previously afforded by section 6013(e).  Subsection (c) permits a taxpayer who has divorced or separated to elect to have his or her tax liability calculated as if separate returns had been filed.  Subsection (f) confers discretion upon the Commissioner to grant equitable relief, based on all facts and circumstances, in cases where relief is unavailable under subsection (b) or (c).

In August 1998 petitioner made administrative elections for relief pursuant to new section 6015.  On January 13, 1999, respondent conceded that petitioner was entitled to relief under section 6015(c).  Respondent was entitled to take a reasonable

amount of time to verify whether the facts established by petitioner met the conditions for relief under section 6015(c), particularly considering that the new statute raised novel and complex interpretive issues. See Sokol v. Commissioner, 92 T.C. 760, 765 n.10 (1989). We believe that respondent's concession within 5 months of petitioner's election under section 6015 was reasonable. See Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984) (United States was substantially justified in waiting 11 months after filing of complaint in Equal Access to Justice case, because the issues were not simple); Rouffy v. Commissioner, T.C. Memo. 1987-5 (5-month delay in conceding case was not unreasonable where amended statute raised novel issues).

    c. Period After Respondent Conceded Relief Under Section 6015(c)

In Livingston v. Commissioner, T.C. Memo. 2000-121, we concluded that respondent prevailed on the issue of whether he was required to address petitioner's election under section 6015(b) after respondent had conceded that petitioner was entitled to relief under section 6015(c). Respondent's position was substantially justified in this regard. Moreover, for the period after respondent had offered to concede that petitioner was entitled to full relief from joint liability, petitioner unreasonably protracted the proceedings and is therefore ineligible for costs pursuant to section 7430(b)(3). See Mearkle v. Commissioner, 90 T.C. 1256 (1988).

In light of our conclusions that the position of the United States was substantially justified, we need not reach respondent's arguments that petitioner unreasonably protracted the proceedings (apart from our conclusion that petitioner unreasonably protracted the proceedings after January 13, 1999), that petitioner has failed to exhaust administrative remedies, and that the fees requested are unreasonable.

Petitioner's motion for litigation and administrative costs will be denied.

An appropriate order and decision will be entered.