T.C. Memo. 2012-83

UNITED STATES TAX COURT

MARC A. TRZECIAK AND MIRIAM TRZECIAK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6370-10.                    Filed March 22, 2012.

<u>Vincent J. Nardone</u> and <u>M. Pilar Puerto</u>, for petitioners.

<u>Terry Serena</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This matter is before us on petitioners' motion that

petitioners entitled "MOTION FOR AWARD OF REASONABLE LITIGATION

AND ADMINISTRATIVE COSTS" and that we have recharacterized as petitioners' motion for an award under section 7430 of reasonable litigation costs (petitioners' motion). We shall deny petitioners' motion.

Background

The record establishes and/or the parties do not dispute the following.

At all relevant times, petitioners resided in Centerville, Ohio (Centerville).

During at least 2005 and 2006, the years at issue, petitioner Miriam Trzeciak (Ms. Trzeciak) owned, managed, and rented 14 single-family residences (rental properties). During those years, 13 of those rental properties were in or in the vicinity of Columbus, Ohio (Columbus). As part of her management responsibilities, Ms. Trzeciak, inter alia, performed administrative and bookkeeping tasks with respect to the rental properties, showed the rental properties to prospective tenants, handled tenant complaints, and dealt with contractors regarding repairs (Ms. Trzeciak's real estate activities). In order to carry out certain of those responsibilities, Ms. Trzeciak periodically traveled to the rental properties from petitioners' home in Centerville (petitioners' residence).

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return (return), for each of their taxable years 2005 (2005 return) and 2006 (2006 return). Barnaby G. Reagan (Mr. Reagan), a certified public accountant, prepared those

returns. Petitioners attached to each of their 2005 return and 2006 return Schedule E, Supplemental Income and Loss (Schedule E).

In Schedule E that petitioners attached to their 2005 return (2005 Schedule E), petitioners reported a total rental real estate loss of $126,376 attributable to Ms. Trzeciak's real estate activities. Petitioners attached to their 2005 Schedule E statements entitled "OTHER EXPENSES" regarding Ms. Trzeciak's respective rental properties with respect to which petitioners claimed that loss. Each of those statements included a claimed expense of $819 for an item referred to as "COM-MON OVERHEAD".

In Schedule E that petitioners attached to their 2006 return (2006 Schedule E), petitioners reported a total rental real estate loss of $151,884 attributable to Ms. Trzeciak's real estate activities. Petitioners attached to their 2006 Schedule E statements entitled "OTHER EXPENSES" regarding Ms. Trzeciak's respective rental properties with respect to which petitioners claimed that loss. Each of those statements included a claimed expense of $517 for an item referred to as "COM-MON OVERHEAD".

Around April 7, 2008, respondent assigned a revenue agent (respondent's revenue agent) to examine each of petitioners' 2005 return and 2006 return (respon-

dent's examination). Petitioners retained Mr. Reagan to represent them in connection with respondent's examination.

During the course of respondent's examination, petitioners presented certain documents to respondent's revenue agent which established (1) that Ms. Trzeciak spent 915.6 hours and 806.8 hours during 2005 and 2006, respectively, with respect to Ms. Trzeciak's real estate activities and (2) that Ms. Trzeciak spent 217 hours and 77 hours of those total hours during 2005 and 2006, respectively, traveling between petitioners' residence and her rental properties.

Respondent's revenue agent prepared a workpaper dated August 12, 2008 (revenue agent's August 12, 2008 workpaper), in which he set forth the "final determination of the RA [revenue agent]/government's position". That final determination was: "The loss from the rental activities is limited per IRC 469." The revenue agent's August 12, 2008 workpaper stated:

> The taxpayer [Ms. Trzeciak] does not employ anyone to handle the management of the properties, and handles bookkeeping, advertising * * *, paying bills, collecting and depositing rent, scheduling major maintenance, and performing minor maintenance, and tenant relations, mostly performed from her [petitioners'] residence. No mention was made of a space [in petitioners' residence] that was used regularly and exclusively for the taxpayer's rental activities. The taxpayer also checked her vacant properties for damage and soundness about once a month. In 2006, the taxpayer spent 77 hours making the trip from

Dayton [Centerville],[1] where her residence is, to Columbus, with each round trip taking a reported 3.5 hours. In 2005, the taxpayer spent over 217 hours traveling between her residence and Columbus. The taxpayer did not transport anything other than signs, paperwork, and herself. While in Columbus, the taxpayer would show properties to prospective tenants, visit vacant properties to ensure the properties were secure, and visit rented properties if the tenant had concerns. In 2005, much of the travel time is in relation to searching for other properties and purchasing the properties.

*   *   *   *   *   *   *

In T.C. Summary Opinion 2003-130 [Truskowsky v. Commissioner], the taxpayer's travel from his home to his activity was considered a commute. The taxpayer argued that the travel between his home and his ranch constituted 'work'. The court disagreed, while recognizing that some travel may constitute work (e.g., hauling equipment, transporting items integral to the operation), and asserted that travel is analogous to a personal commute, and therefore not 'work'. As such, travel time claimed by the taxpayer should not be considered in the hourly tests under IRC 469(c)(7), and Reg. 1.469-5 and 5T.

*   *   *   *   *   *   *

[Ms. Trzeciak's] [t]ravel time is analogous to personal commute. It is well established the expenses for commuting from home to work are personal and not deductible under IRC 162. * * * Where one chooses to live is a matter of personal convenience. * * * Similarly, in computing the hourly tests for participation (i.e. work) in an activity under section 469, travel time from a personal residence is inherently personal hours that do not represent participation in a business.

---

[1]We take judicial notice that Centerville is a suburb of Dayton, Ohio (Dayton).

On August 18, 2008, Mr. Reagan sent respondent's revenue agent a letter on behalf of petitioners (petitioners' August 18, 2008 letter) with respect to the revenue agent's August 12, 2008 workpaper. That letter stated:

> I am responding to your stated position that the travel time spent by the taxpayer [Ms. Trzeciak] does not constitute hours that count toward meeting the 750 hour test under IRC Sec. 469(c)(7)(B)(ii). My research indicates that the time is very clearly qualified to count toward the hours test.
>
> My reading of the three U.S. Tax Court cases you cite as support for your position does not convince me of their merit. The following is a summary of each case:
>
> Osama A. Mowafi v. Commissioner, TC Memo 2001-111: The primary issue in this case is the credibility of the records of the taxpayer. This taxpayer claimed ridiculous hours of time spent working on his rentals activities. There is no substantive discussion of travel time per se in this case. The credibility of the hours claimed by Mrs. Trzeciak is not an issue, and therefore I see no case relevance.
>
> Robert P. Sweet, et ux. v. Commissioner, TC Summary Opinion 2004-125: The travel issue in this case is focused upon the exceptional distance from the taxpayer's home to the rental property. The distance was 1,570 miles round-trip, and the travel time was 219 hours. This time and distance is many multiples of that claimed by Mrs. Trzeciak, and appears to fail the "ordinary and necessary" test of travel. The 30 to 40 hours of travel claimed by Mrs. Trzeciak is not properly comparable to the facts of this case. I also believe the court errs when it makes reference to the "commuting" standard of most trade or business activities. I will expound on this point later.
>
> Thomas E. Truskowsky, et ux. V. Commissioner, TC Summary Opinion 2003-130: This case focuses on a cattle activity passive activity

analysis. The issue here is not that of a Real Estate Professional. For this reason, the discussion of travel is not on point, once again due to the unique nature of travel that is allowable in conjunction with managing rental real estate.

Travel away from home is an integral element of owning and managing one's rental real estate. In seeking authority for this issue, let's start with the tax return forms. Schedule E of form 1040 recognizes this necessary deduction with a separate line for "Auto and Travel". Because the deduction is specifically allowable, then it follows that the time associated with travel should count toward the 750 hour test. The Schedule E instructions for this line item say: "You can deduct ordinary and necessary auto and travel expenses related to your rental activities, including 50% of meal expenses incurred while traveling away from home." The key element here is "*while traveling away from home*". There is no mention of "commuting", which is a very important issue in general "trade or business" activity travel expenses. The instructions do not offer any more specific direction regarding what constitutes qualified travel.

\* \* \* \* \* \* \*

\* \* \* If the issue of commuting was relevant to management of rental real estate, there would be some mention of it in the IRS guidance. Absence of this implies that travel for rental property management is unique.

On October 6, 2008, Mr. Reagan sent to respondent's Appeals Office on behalf of petitioners a "FORMAL PROTEST" (petitioners' protest),[2] in which

---

[2]For convenience, when discussing petitioners' August 18, 2008 letter and petitioners' protest, we shall sometimes refer to Mr. Reagan's arguments made on behalf of petitioners as Mr. Reagan's arguments.

petitioners protested the proposed determinations of the revenue agent. The protest

stated in pertinent part:

> The taxpayer [Ms. Trzeciak] is very clearly "*directly* involved in day-to-day management and operations" of the rental properties. Management of the rental real estate properties is where the majority of the taxpayer's (Mrs. Trzeciak) time is spent. She has no other business involvement. * * * There is no management company utilization with the rental properties, and every action and decision related to the operation of the rental properties is done by the taxpayer. The entire investment is integrated as a business, which happens to be ownership and management of rental real estate. Do not overlook the fact that the ultimate sale of the properties is part of the ownership cycle, and keeping the properties in very good condition has a strong correlation with value realized at the time of sale. Accomplishing this requires the taxpayer to frequently be physically present at the properties, taking a "hands on" approach. The taxpayer (Miriam) has an advanced educational background, and she manages the real estate activity with a high degree of sophistication. This fact precludes any argument that "administrative" hours spent by the taxpayer should not count. Time spent creating and reviewing financial statements, paying bills and management of finances are all hours spent directly managing the rental properties that count toward the 750 hour test.

> \* \* \* \* \* \* \*

> The concept of "commuting" does not apply to managing rental real estate or being a Real Estate Professional. This point was made in my letter dated August 18, 2008. The IRS guidance on travel for rental properties recognizes that real estate is by nature not able to be properly managed by staying at home. Travel expenses are allowed as soon as a taxpayer leaves their home, and the time must follow the allowable deduction. It is not a "commute", such as travel by an employee to a job. The choice of an employee or business owner to live a certain distance from their place of work is a personal decision. The purchase and management of rental real estate is not done because of proximity

to the home. It is done because the property is in a suitable location for current rental income and future resale. Because the rental real estate location is based upon a business decision, and not a personal one, travel to and from the properties is inherently deductible as a business expense, and the time is not a "commute".

\* \* \* \* \* \* \*

The case of <u>Thomas E. Truskowski [sic], et ux. v. Commissioner, TC Summary Opinion 2003-130</u> is not on point. This case does not address the unique nature of rental property as previously discussed in this appeal. This case also dealt with a taxpayer who had a full-time job in addition to their cattle activity. The cattle activity was not their primary business activity, but was in fact an investment activity. This case also raises the issue of "commuting", which has been previously discussed in the protest as not applicable to management of rental properties.

By letter dated November 11, 2008, respondent's Appeals Office acknowledged receipt of petitioners' protest.

On July 31, 2009, an officer with respondent's Appeals Office who was assigned petitioners' case (respondent's Appeals officer) made the following pertinent entries in his so-called Case Activity Record Print:

Prepare for 9:00 conference. Researched commuting and rental real estate for case memo and to provide to taxpayer if I can prove that he is wrong (or perhaps rethink my analysis if the rep is right).

Brief conference. The rep [Mr. Reagan] is completely unwilling to even think the [sic] he has any hazards on this case. He believes that he has a strong position that the tax home is in her home and that all travel to Columbus is deductible and qualifies as passive loss hours. He believes that the agent's cases, which are the only thing we have,

are worthless cases because they did not involve rental real estate. The rep believes that real estate businesses are different for purposes of applying the commuting rules. I asked for authority of this position on this because it was a foreign concept to me. He didn't give me anything except for the instructions to schedule E. We are at an impasse since this question is the question around which everything revolves. We agreed to disagree.

On August 11, 2009, respondent's Appeals officer made the following entry in his Case Activity Record Print:

> Research on tax home. Nothing specifically on point. Since the taxpayer-wife's [Ms. Trzeciak's] only trade or business is in Columbus and since that is where the income is earned where she spends the majority of her time, Columbus would be her tax home for tax purposes.

Respondent's Appeals officer prepared a document entitled "Appeals Transmittal and Case Memo" dated December 9, 2009. That memo stated in pertinent part:

> **Taxpayers' Position**:
>
> The taxpayers believe that taxpayer-wife is a real estate professional for the following reasons:
>
> - Taxpayer participates in the activity in a regular, continuous and substantial basis.
> - Travel from Dayton [Centerville] to Columbus:
>   - There is no authority, statutory or otherwise, that specifically states that travel time doesn't count toward the 750 hour test.
>   - The travel is an *integral* part of the taxpayer's business.

- All travel time is directly related to the management of the properties.
- There is no "particular" reason not to consider the travel time as work.
- Travel hours must count as hours worked because the expenses associated with the travel are deductible under IRC 162.
- The concept of "commuting" does not apply to managing rental real estate or being a real estate professional.
- The purchase and management of rental real estate is unrelated to proximity to home.

\*  \*  \*  \*  \*  \*  \*

**Recommendation**:

I recommend that we fully sustain the [revenue] agent's position.  The entire case comes down to the question of whether \* \* \* [Ms. Tzreciak's] travel from Dayton [Centerville] to Columbus qualifies as hours worked.  If such hours do not qualify, the hours worked are less than the 750 hours necessary for the taxpayer to be a real estate professional. \* \* \*

I agree with the [revenue] agent's determination that travel between Dayton [Centerville] and Columbus is not work associated with the activity that qualifies for the 750 hours.  It is clearly time spent traveling from home to a work site, i.e., commuting.  The [revenue] agent's determination is well supported by the case law cited by the agent and by case law that I found in my research. \* \* \*

\*  \*  \*  \*  \*  \*  \*

The taxpayers' representative was not even willing to discuss the *possibility* that any of the hours could be found to be non-working hours by a court or that the commuting rules apply to the taxpayers'

travel.  This made it impossible to even pursue a settlement with the taxpayers.

Respondent's Appeals officer also proposed the imposition of the accuracy-related penalty under section 6662(a) for each of petitioners' taxable years 2005 and 2006.  With respect to that penalty, respondent's Appeals officer stated:

**SUMMARY AND RECOMMENDATION**

**Does the accuracy penalty apply to the proposed passive activity loss adjustment * * *?**

Yes.

The [revenue] agent proposes the assertion of the accuracy penalty for both 2005 and 2006 because:

- There is a substantial understatement.
- There was no disclosure on the return regarding the hours that were spent or that a substantial portion of the hours were questionable.
- There are no exceptions to the application of the penalty.  (The [revenue] agent is apparently un-aware of the reasonable cause provisions of the penalty).

I believe that the government could have considerable hazards should the case be litigated.  The representative/preparer [Mr. Reagan] defi-nitely seems to have strong ideas regarding the qualification of personal commuting and acquisition activities as participation.  While I believe these ideas are not supportable, the fact remains that the taxpayer may be able to establish reliance on a tax professional.

On the other hand, the presence of so many questionable hours, and the materiality of the loss deductions, seems to give the government a reasonable chance of prevailing.

Even though I would recommend a significant concession in the event of an agreed case, I believe that the penalty is strong enough that it should be included in the statutory notice.

On December 9, 2009, respondent issued to petitioners a notice of deficiency with respect to their taxable years 2005 and 2006 (notice). In that notice, respondent determined, inter alia, to disallow under section 469 (section 469 determination) petitioners' total rental real estate losses of $126,376 and $151,884 that they claimed in their 2005 Schedule E and 2006 Schedule E, respectively. In support of that determination, respondent determined in the notice:

> [T]he losses of $126,376.00 on 2005 and $151,844.00 on 2006 claimed in connection with your rental activities are a passive activity. * * * You have not established that you met the requirements of Internal Revenue Code section 469(c)(7). Therefore, your rental loss is determined to be passive. Passive losses can only be offset by passive income. Passive losses are also allowed to the extent they qualify for the special allowance for rental real estate activities. Since you have no passive income that your rental losses can be offset by, and do not qualify for the special allowance for rental real estate activities, your rental losses of $126,376.00 for 2005 and $151,884.00 for 2006 are not allowable.

Respondent also determined in the notice that petitioners are liable for each of their taxable years 2005 and 2006 for the accuracy-related penalty under section 6662(a) (section 6662(a) determination).

After petitioners received the notice, they retained as their attorneys the Nardone Law Group, LLC (petitioners' attorneys).[3] Vincent J. Nardone (Mr. Nardone) and M. Pilar Puerto (Ms. Puerto) of that law group were primarily responsible for representing petitioners.

On March 8, 2010, petitioners' attorneys attempted unsuccessfully to speak with respondent's Appeals officer in order to discuss the determinations in the notice and had to leave a voicemail message. Thereafter, on the same date, Mr. Nardone sent by facsimile to respondent's Appeals officer a memorandum in which he memorialized that voicemail message and to which he attached Form 2848, Power of Attorney and Declaration of Representative, authorizing Mr. Nardone and Ms. Puerto to represent petitioners with respect to their taxable years 2005 and 2006.

On March 9, 2010, petitioners' attorneys mailed to the Court the petition that they had prepared on behalf of petitioners, in which they contested the determinations in the notice. The Court received and filed that petition on March 15, 2010.

---

[3]Petitioners' motion seeks costs relating to their representation by petitioners' attorneys, not by Mr. Reagan.

On March 10, 2010, petitioners' attorneys had a telephonic discussion with respondent's Appeals officer (March 10, 2010 discussion).  On March 13, 2010, Mr. Nardone sent by facsimile to respondent's Appeals officer a memorandum (March 13, 2010 memorandum) in which he memorialized the March 10, 2010 discussion.  That memorandum requested "an additional meeting and appeals conference on their [petitioners'] 2007 and 2008 tax periods."[4]  Respondent's Appeals Office denied that request.

In the petition, petitioners alleged in pertinent part:

>  5.      The facts upon which the Petitioners rely, as the basis of their case, are as follows:
>
>          a.      In 2005 and 2006:  (i) the Petitioners owned real estate properties (the "Properties") and conducted rental operations on the Properties; (ii) Miriam Trzeciak ("Mrs. Trzeciak") was not employed and did not work as an independent contractor in 2005 or 2006; (iii) Mrs. Trzeciak materially participated in the rental operations of the Properties--as that phrase is used in I.R.C. § 469--including conducting the day-to-day management and operations of the Properties, showing the Properties to prospective tenants, placing tenants in and out of the Properties, tending to tenant complaints, collecting and enforcing rent, following up with contractors for repairs of the Properties, handling the administrative and record keeping matters for the Properties, and traveling to the Properties to fulfill all of these duties (the "Rental Real Estate Activities"); (iv) Mrs. Trzeciak's Rental Real Estate Activities

---

[4]Mr. Nardone evidently made a typographical error in drafting the March 13, 2010 memorandum in identifying the taxable years at issue in the notice as 2007 and 2008.  The years at issue in the notice are 2005 and 2006.

were regular, continuous, and substantial--as that phrase is used in I.R.C. § 469; (v) more than half of Mrs. Trzeciak's personal services performed in all trade or businesses were in the Rental Real Estate Activities; (vi) Mrs. Trzeciak spent more than 750 hours in the Rental Real Estate Activities; (vii) Mrs. Trzeciak was a real estate professional as that term is understood under I.R.C. § 469; and (vii) [sic] in connection with the Rental Real Estate Activities, the Petitioners incurred losses of $126,376.00 in 2005 and $151,844.00 in 2006.

\* \* \* \* \* \* \*

e. In 2005 and 2006, (i) there was not a substantial understatement of income tax on the Petitioners' 2005 and 2006 Returns; (ii) there was no valuation misstatement on the Petitioners' 2005 and 2006 Returns; (iii) the Petitioners were not negligent and did not disregard the rules or regulations; and (iv) to the extent the Court would find that a deficiency or liability exists, the Petitioners had reasonable cause for such deficiency or liability, including but not limited to the fact that the Petitioners made good faith efforts and took reasonable care in preparing the Petitioners' 2005 and 2006 Returns; and properly relied on the Petitioners' tax professional's advice after providing such professionals with all the necessary facts.

Petitioners did not allege in the petition that Ms. Trzeciak maintained an area or an office in petitioners' residence where she did work relating to her real estate activities, let alone an area or an office in that residence that qualified as her "principal place of business" under section 280A[5] (section 280A principal place of

---

[5]All section references are to the Internal Revenue Code (Code) in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

business),[6] and thus a home office for Federal income tax (tax) purposes (tax home office), with respect to Ms. Trzeciak's real estate activities.

On May 7, 2010, respondent filed an answer in the instant case. In the answer, respondent denied that respondent erred with respect to the determinations in the notice and denied each of the allegations set forth in the petition quoted above, except the allegation in paragraph 5.a.(i). In the answer, respondent requested "that the relief sought in the petition be denied and that respondent's determination, as set forth in the notice of deficiency, be in all respects approved."

On June 24, 2010, Mr. Nardone sent respondent's counsel a letter on behalf of petitioners (petitioners' June 24, 2010 letter), in which he asserted: "***This offer constitutes a 'qualified offer' pursuant to I.R.C. §7430(c)(4)(E) and how that term is defined in §7430(g)(1)***." Respondent did not respond to petitioners' June 24, 2010 letter within the time prescribed by section 7430(g)(1)(D).

---

[6]Sec. 280A provides in pertinent part that "in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Sec. 280A(a). Sec. 280A(c)(1)(A) provides the following exception for certain business or rental use: "Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer".

On September 14, 2010, the Court served on the parties (1) a notice setting case for trial at the Court's trial session in Columbus that was to begin on February 14, 2011, and (2) the Court's standing pretrial order.

On December 17, 2010, Ms. Puerto sent an email to respondent's counsel, in which she set forth petitioners' position with respect to the determinations in the notice. In that email, Ms. Puerto stated: "The main issue is whether Mrs. Trzeciak's time spent traveling from her home office to the rental properties and back counts for purposes of satisfying the requirements under §469(c)(7)."

On January 3, 2011, Ms. Puerto, at the request of respondent's counsel, sent another email to respondent's counsel (January 3, 2011 email), in which she maintained that "The Home Office qualifies as * * * [Ms. Trzeciak's] principal place of business for the 2005 and 2006 tax years" for Ms. Trzeciak's real estate activities. In that email, Ms. Puerto discussed the facts and the law that petitioners' attorneys believed established (1) that during the years at issue Ms. Trzeciak maintained a "Home Office" in petitioners' residence and (2) that that so-called home office qualified as the section 280A principal place of business of Ms. Trzeciak. Included in the discussion of the facts asserted in the January 3, 2011 email were that Ms. Trzeciak "designated a room as the office for" Ms. Trzeciak's real estate activities and that Ms. Trzeciak "was the only individual that used" that

office in petitioners' residence. Included in the discussion of the law in the January 3, 2011 email was the following:

> The term principal place of business includes a place of business used by the taxpayer to perform administrative or management activities related to the taxpayer's trade or business if there is no other fixed location of the taxpayers' trade or business where substantial administrative or management activities are undertaken. See Code § 280A(c).

On January 15, 2011, petitioners' attorneys had a telephonic discussion with respondent's counsel during which they described Ms. Trzeciak's so-called home office as a "fully functional workplace". Respondent's counsel asked petitioners' attorneys to provide him with substantiation establishing that Ms. Trzeciak's so-called home office qualified as her section 280A principal place of business and thus her tax home office.

On January 20, 2011, Ms. Puerto sent an email to respondent's counsel (January 20, 2011 email), in which she provided the substantiation that he had requested.

On the same day on which respondent's counsel received the January 20, 2011 email, he prepared a so-called counsel settlement memorandum (settlement memorandum). The settlement memorandum indicated that "petitioner [Ms. Trzeciak] maintained a fully functional office within her home [petitioners' resi-

dence] for the sole purpose of managing the [rental] properties." The settlement

memorandum also stated:

> Because the petitioner's [Ms. Trzeciak's] maintenance of an office [in petitioners' residence] was not previously developed, this case was initially viewed by our office as involving the issue of whether the petitioner's trips between Dayton [Centerville] and Columbus were a form of commuting. * * *
>
> * * * the fact that the petitioner maintained a legitimate business office in Dayton [Centerville] had not been clearly advanced much less established at the time of our earlier analysis. Once it became clear that this was the case, and that the travel time was not "commuting" but was travel between business locations, we concluded based on established authority that the travel hours could be included for the purposes of determining the petitioner's "material participation" in the activity.

The parties did not file pretrial memoranda on January 31, 2011, because the

Court's standing pretrial order did not require them to do so if they had reached a

basis of settlement, which they had. On February 11, 2011, the parties filed a

stipulation of settlement (stipulation of settlement).[7] That stipulation provided in

pertinent part:

> The parties, pursuant to T.C. Rule 231(c) and in resolution of all issues in this case except those relating to the petitioners' claim for litigation and administrative costs under I.R.C. § 7430, hereby submit and stipulate to the following:

---

[7]Because the parties filed a stipulation of settlement, they did not execute a stipulation of facts for trial.

      1.  The petitioners are not liable for any deficiencies in income tax, and are not due any overpayments of income tax, for taxable years 2005 and 2006.

      2.  The petitioners are not liable for penalties under the provisions of I.R.C. § 6662(a) for taxable years 2005 and 2006.

On February 11, 2011, petitioners filed petitioners' motion.  Respondent filed a response to petitioners' motion (respondent's response), and petitioners filed a reply to respondent's response (petitioners' reply).  (We shall refer collectively to petitioners' motion and petitioners' reply as petitioners' filings.)  Petitioners attached as exhibits to petitioners' reply, inter alia, (1) an affidavit of  Mr. Reagan (Mr. Reagan's affidavit) and (2) an affidavit of Ms. Trzeciak (Ms. Trzeciak's affidavit).

Mr. Reagan's affidavit stated in pertinent part:

6.      During the examination, Petitioner Miriam Trzeciak ("Miriam") provided the revenue agent a detailed log of the work relating to the rental properties that Miriam performed during the 2005 and 2006 tax years.

7.      I [Mr. Reagan] informed the revenue agent that--as reflected in Miriam's 2005 and 2006 logs--Miriam spent a substantial amount of hours performing administrative duties for the rental properties out of an office located in her home.  Further, I informed the revenue agent that Petitioners incurred certain expenses in operating this office out of their home, and Petitioners reported and deducted these expenses on their Returns.

8.    Petitioners provided the revenue agent a copy of Petitioners' 2005 and 2006 rental property expense report * * * ("Expense Spreadsheets"). The first column of the Expense Spreadsheets lists the common overhead expenses for Petitioners' rental properties during the 2005 and 2006 tax years.

9.    During the examination, the revenue agent briefly asked me what was included under the common overhead expenses listed on the Expense Spreadsheets. I informed the revenue agent that the common overhead expenses included--among other things--the expenses relating to Petitioners' home office that were incurred during the 2005 and 2006 tax years. I directed the revenue agent to the areas on Petitioners' Returns where Petitioners reported and deducted their home office expenses. The revenue agent did not ask me any further questions regarding the common overhead expenses or home office expenses, or any details regarding Petitioners' home office.

10.    The revenue agent spent very little time on and did not question the expenses that Petitioners' reported on their Returns. The revenue agent's main focus during the examination was in finding out how many hours Miriam spent performing work relating to the rental properties.

11.    Petitioners provided the revenue agent all of the information that Respondent requested. Respondent never asked for any information regarding Petitioners' home office or related expenses.

12.    Petitioners disagreed with the revenue agent's position that Miriam's travel to and from her residence and the rental properties should not count towards Petitioners satisfying the hourly requirements under I.R.C. §469(c)(7) because Miriam's travel was commuting.

\*     \*     \*     \*     \*     \*     \*

14. During the initial appeals conference, I argued, on behalf of Petitioners, that Miriam's travel to and from the rental properties and Petitioners' residence should count towards Petitioners' satisfying the hourly requirements of I.R.C. §469(c)(7). Further, I argued that Miriam's travel was not a form of commuting.

15. I informed Appeals that Miriam performed all of the administrative functions relating to the rental properties from Petitioners' home office and Petitioners reported the expenses relating to their home office on Petitioners' Returns. Like the revenue agent, the appeals officer focused on the commuting argument and never challenged or questioned the home office expenses.

Ms. Trzeciak's affidavit stated in pertinent part:

3. During the 2005 and 2006 tax years, I [Ms. Trzeciak] had an office in my home that was designated for my rental property business. In that office, I performed all of the management and administrative matters for the rental properties.

4. During the IRS's examination of Petitioners' Form 1040 U.S. Individual Tax Return for tax years 2005 and 2006 (the "2005 and 2006 Returns"), the revenue agent interviewed me regarding my activities in connection with my rental properties. * * * I told the revenue agent that I was the only person that managed the rental properties, and I performed most of the management and administrative work at my home office.

5. The revenue agent never asked me during the interview whether my home office was used regularly and exclusively for the rental property business or any other questions about the home office.

6. During the interview, the revenue agent's questions were focused primarily on the reasons, dates, and length of the travel from my

home office to the rental properties. The revenue agent did not inquire about my home office.

7. During the 2005 and 2006 tax years, I kept a journal of all of the work that I performed for my rental properties. I had various entries regarding the management and administrative work that I performed at my home office. I went over one month's worth of journal entries with the revenue agent that included entries for work performed at the home office.

Respondent filed a reply to petitioners' reply (respondent's reply). Thereafter, the Court had a telephonic conference (Court's telephonic conference) with respective counsel for the parties (collectively, counsel). During that conference, the Court advised counsel that the Court read Mr. Reagan's affidavit to be in conflict in at least one material respect with certain of the documents (petitioners' documents) that petitioners had attached to certain of petitioners' filings regarding what petitioners had argued during the administrative proceedings before the Internal Revenue Service (administrative proceedings). As a result, the Court informed counsel that the Court was unwilling to rely on that affidavit to establish certain alleged facts therein. During the Court's telephonic conference, the Court asked counsel whether they believed it appropriate for the Court to hold an evidentiary hearing in order to resolve the conflict that the Court believed existed in at least one material respect between Mr. Reagan's affidavit and certain of petitioners' documents and directed

counsel to file respective supplements to their respective replies in which they set forth their respective views as to the relevancy and/or materiality of that apparent conflict in deciding whether to grant petitioners' motion.

Respondent filed a supplement to respondent's reply. In that supplement, respondent stated: "The respondent submits that whether or not petitioners' POA [Mr. Reagan] mentioned petitioners' home office during the examination of their 2005 and 2006 returns is neither material nor relevant for the Court's present considerations."[8]

---

[8]According to respondent, the record in the instant proceeding does not establish that Mr. Reagan argued to respondent's representatives during the administrative proceedings that a work area or an office in petitioners' residence where Ms. Trzeciak did work relating to her real estate activities qualified as a sec. 280A principal place of business and thus a tax home. Respondent also points out that petitioners did not even allege in the petition that Ms. Trzeciak did work relating to Ms. Trzeciak's real estate activities in petitioners' residence, let alone that she had a tax home office in that residence. Consequently, respondent contends that, as a result of reviewing the record established during the administrative proceedings and the petition that petitioners filed commencing this case, respondent could not have been, and was not, aware before or when respondent filed the answer of any arguments that petitioners might have made during those administrative proceedings that a work area or an office in petitioners' residence where Ms. Trzeciak did work relating to her real estate activities was a sec. 280A principal place of business and thus a tax home. Therefore, according to respondent, whether Mr. Reagan made any such argument to respondent's representatives during the administrative proceedings is not relevant and/or material to the Court's consideration of petitioners' motion.

Petitioners filed a supplement to petitioners' reply (petitioners' supplement). (We shall sometimes refer collectively to petitioners' motion, petitioners' reply, and petitioners' supplement as petitioners' complete filings.) In that supplement, petitioners stated:

> While Mr. Reagan's statements in his affidavit are relevant to this case, by supporting the fact that Petitioner communicated to Respondent early on in the examination phase that the Petitioners had a home office, the determination of whether these statements actually occurred is not material. There is sufficient evidence on the record and objectively not in disagreement showing that Respondent has not met its burden of proving that its position was substantially justified.

In none of the respective filings that the parties made with respect to petitioners' motion did they ask for a hearing (evidentiary or nonevidentiary) with respect to that motion. We conclude that a hearing is not necessary. See Rule 232(a)(2).

## Discussion

We explain initially why we recharacterized the motion that petitioners filed entitled "MOTION FOR AWARD OF REASONABLE LITIGATION AND ADMINISTRATIVE COSTS". The costs that petitioners are claiming, which are shown in certain of petitioners' complete filings, are expenses or costs relating to the preparation of the petition, the filing of the petition, and certain activities that petition-

ers' attorneys conducted thereafter.[9]  See supra note 4.  As a result, we recharacterized the motion that petitioners filed as a motion for an award of reasonable litigation costs.

Section 7430(a) authorizes an award to the prevailing party of reasonable litigation costs incurred in connection with a case brought in the Court against the Commissioner of Internal Revenue (Commissioner) involving the determination of any tax, interest, or penalty under the Code, provided that certain requirements are satisfied.  We consider here only whether petitioners qualify as the "prevailing party" for purposes of section 7430(a).  In considering that question, we shall address only (1) whether respondent's position in the instant case was substantially justified, see sec. 7430(c)(4)(B)(i), and (2) whether the so-called qualified offer rule applies, see section 7430(c)(4)(E).  That is because resolution of those questions resolves the issue of whether petitioners are entitled to an award under section 7430(a).

---

[9]On Mar. 8, 2010, the day before petitioners' attorneys mailed to the Court the petition that they had prepared on behalf of petitioners, petitioners' attorneys attempted to contact respondent's Appeals officer by telephone and facsimile, and on Mar. 10, 2010, the day after petitioners' attorneys mailed the petition to the Court, petitioners' attorneys had a telephonic discussion with respondent's Appeals officer.  In addition, on Mar. 13, 2010, Mr. Nardone sent by facsimile to respondent's Appeals officer a memorandum.  The record does not establish how much time petitioners' attorneys spent on those days in attempting to contact or in contacting respondent's Appeals officer.

The term "prevailing party" generally means any party who (1) has substantially prevailed with respect to (a) the amount in controversy, sec. 7430(c)(4)(A)(i)(I), or (b) the most significant issue or set of issues presented, sec. 7430(c)(4)(A)(i)(II), and (2) meets the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B), sec. 7430(c)(4)(A)(ii).[10]  In order to qualify for an award under section 7430(a), the prevailing party must (1) have exhausted the available administrative remedies, sec. 7430(b)(1), and (2) not have unreasonably protracted the court proceeding, sec. 7430(b)(3).[11]  The party seeking an award under section 7430(a) has the burden of establishing that all of the foregoing criteria have been satisfied and that the costs claimed are reasonable litigation costs incurred in connection with the court proceeding, as defined in 7430(c)(1).[12]  Rule 232(e); see also Corson v. Commissioner, 123 T.C. 202, 205-206 (2004).

Section 7430(c)(4)(B)(i) provides an exception to the definition of the term "prevailing party" in section 7430(c)(4)(A).  Section 7430(c)(4)(B)(i) provides:  "A

---

[10]Respondent acknowledges that petitioners have complied with (1) sec. 7430(c)(4)(A)(i)(II) and (2) sec. 7430(c)(4)(A)(ii).

[11]Respondent acknowledges that petitioners have complied with sec. 7430(b)(1).  Respondent maintains, however, that petitioners have not established that they complied with sec. 7430(b)(3).

[12]Respondent maintains that petitioners have not established that they complied with sec. 7430(c)(1) and Rule 231(d).

party shall not be treated as the prevailing party in a proceeding * * * if the United States establishes that the position of the United States in the proceeding was substantially justified."

Respondent argues that respondent's position in this proceeding (respondent's litigating position) was substantially justified, see sec. 7430(c)(4)(B)(i), and that therefore petitioners are not the "prevailing party", as defined in section 7430(c)(4)(A). Respondent has the burden in the instant proceeding of establishing that respondent's litigating position was substantially justified. See sec. 7430(c)(4)(B)(i).

The position of the United States is substantially justified if it "is one that is 'justified to a degree that could satisfy a reasonable person' or that has a 'reasonable basis both in law and fact.'" Swanson v. Commissioner, 106 T.C. 76, 86 (1996) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). "A position has a reasonable basis in fact if there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Corkrey v. Commissioner, 115 T.C. 366, 373 (2000) (citing Pierce, 487 U.S. at 564-565). In determining whether the position of the Commissioner was substantially justified, we must "consider the basis for * * * [the Commissioner's] legal position and the manner in which the position was maintained." Wasie v. Commissioner, 86 T.C. 962, 969 (1986). Whether the

Commissioner acted reasonably will turn "upon those available facts which formed the basis for the position taken * * * during the litigation, as well as upon any legal precedents related to the case." Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997). The Commissioner's position "may be incorrect but substantially justified 'if a reasonable person could think it correct'." Id. (quoting Pierce, 487 U.S. at 566 n.2).

A significant factor in determining whether the Commissioner's position is substantially justified as of a given date is whether, on or before that date, the taxpayer has presented all relevant information under the taxpayer's control and relevant legal arguments supporting the taxpayer's position. Corson v. Commissioner, 123 T.C. at 206-207; sec. 301.7430-5(c)(1), Proced. & Admin Regs.

The Commissioner's concession of an issue is not conclusive as to whether the Commissioner's position with respect to that issue was substantially justified. See Corkrey v. Commissioner, 115 T.C. at 373; Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner, 86 T.C. at 968-969.

In order to determine whether the "position" of the United States is substantially justified, courts "must identify the point at which the United States is first considered to have taken a position, and then decide whether the position taken

from that point forward was or was not substantially justified." Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 442.

For purposes of a court proceeding, the "position of the United States" means "the position taken by the United States in a judicial proceeding to which subsection (a) applies". Sec. 7430(c)(7)(A). Respondent's position in the instant proceeding is that taken in the answer. See, e.g., Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 442.

The Court has held that "the Government's litigating position is formed only after the Government's attorney becomes involved in the case", i.e., after the initiation of litigation. Elder v. Commissioner, T.C. Memo. 2007-281 (citing Huffman v. Commissioner, 978 F.2d 1139 (9th Cir. 1992), aff'g in part, rev'g in part on other grounds, and remanding T.C. Memo. 1991-144). However, the Court may "review[] the government's position in litigation against the backdrop of the administrative actions that have gone before. That backdrop is relevant to a determination whether the government's position *in litigation* is substantially justified". Hanson v. Commissioner, 975 F.2d 1150, 1152 n.2 (5th Cir. 1992).

We now consider whether respondent's litigating position was substantially justified with respect to the section 469 determination. A brief summary of the

pertinent provisions of section 469 will be helpful to our consideration of that question.

Section 469 generally disallows for the taxable year any "passive activity loss". Sec. 469(a). The term "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business in which the taxpayer does not "materially participate". Sec. 469(c)(1).

Rental real estate activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates in that activity. Sec. 469(c)(2), (4). Section 469(c)(7) provides an exception to that general rule for so-called real estate professionals. Under that section, the rental activities of real estate professionals are not treated as per se passive activities, if, inter alia, "such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates" (750-hour requirement). Sec. 469(c)(7)(B)(ii).

Respondent's position throughout the administrative proceedings and when respondent filed the answer in the instant proceeding was (1) that Ms. Trzeciak's travel time between petitioners' residence in Centerville and the rental properties in

and around Columbus (Ms. Trzeciak's travel time) constituted commuting, (2) that therefore that time may not be included as hours spent in the conduct of Ms. Trzeciak's real estate activities for purposes of meeting the 750-hour requirement for each of petitioners' taxable years 2005 and 2006, and (3) consequently petitioners' claimed respective real estate losses for their taxable years 2005 and 2006 constituted passive losses under section 469.[13]  It is respondent's position in the instant proceeding that respondent's litigating position was substantially justified because, as of May 7, 2010, the date on which respondent filed the answer, through at least December 17, 2010, petitioners had not claimed, let alone established, that Ms. Trzeciak's travel to her rental properties was from her "business home to the sites of her business' assets."

As we understand it, petitioners' position at its core is that respondent's litigating position was not substantially justified because (1) petitioners presented information to respondent during the administrative proceedings that Ms. Trzeciak did work relating to her rental properties in petitioners' residence, (2)  respondent thus had an obligation during those administrative proceedings, which respondent

---

[13]Petitioners do not dispute that if Ms. Trzeciak's travel time were not included for purposes of determining whether she met the 750-hour requirement for each of petitioners' taxable years 2005 and 2006, petitioners' claimed respective real estate losses for their taxable years 2005 and 2006 would constitute passive losses under sec. 469.

failed to satisfy, to ask petitioners to provide respondent with documentation or other substantiation establishing that Ms. Trzeciak maintained a work area or an office in petitioners' residence that qualified as Ms. Trzeciak's section 280A principal place of business and thus her tax home office, and (3) therefore respondent had that same obligation before respondent filed the answer in the instant proceeding, which respondent failed to satisfy.

Before addressing each of petitioners' contentions in support of their position, we shall set forth our evaluation of Mr. Reagan's affidavit on which petitioners rely. In reading that affidavit, we understood Mr. Reagan to be claiming that he argued during the administrative proceedings that Ms. Trzeciak's travel time was between her tax home office[14] and her rental properties. Mr. Reagan did not make any such

_____

[14]In neither of the two documents that Mr. Reagan submitted on petitioners' behalf to respondent during the administrative proceedings, which are the only such documents that are part of the record (i.e., petitioners' August 18, 2008 letter and petitioners' protest), did Mr. Reagan indicate to respondent's representatives that Ms. Trzeciak maintained a home office or an office in her home, let alone a tax home office. We thus are unwilling to rely on the allegations in paragraphs 7, 9, 11, and 15 of Mr. Reagan's affidavit that he informed respondent's representatives during the administrative proceedings that Ms. Trzeciak had a so-called home office. For the same reasons, we are unwilling to rely on similar allegations in paragraphs 4, 5, 6, and 7 of Ms. Trzeciak's affidavit. Even if Mr. Reagan's affidavit and Ms. Trzeciak's affidavit were correct in stating that they informed respondent's representatives during the administrative proceedings that Ms. Trzeciak maintained a home office or an office in petitioners' residence in which she did work relating to her real estate activities, nothing in the record establishes that

(continued...)

argument to respondent's representatives during the administrative proceedings, as evidenced, for example, by certain others of petitioners' documents, such as petitioners' August 18, 2008 letter and petitioners' protest. During the Court's telephonic conference with counsel, the Court (1) informed them that we were unwilling to rely on that affidavit to establish certain alleged facts therein and (2) gave them the opportunity to ask the Court to hold an evidentiary hearing, which each of them declined to do.

With respect to petitioners' contention that they presented information to respondent during the administrative proceedings that Ms. Trzeciak did work relating to her rental properties in petitioners' residence, we agree that that fact is established by the record.

With respect to petitioners' contention that, because petitioners presented information to respondent during the administrative proceedings that Ms. Trzeciak did work relating to her rental properties in petitioners' residence, respondent had an obligation during those proceedings, which respondent failed to satisfy, to ask petitioners to provide respondent with documentation or other substantiation

---

[14](...continued)
petitioners attempted to, or did, show those representatives that any such office qualified as a sec. 280A principal place of business and thus a tax home office.

establishing that Ms. Trzeciak maintained a work area or an office in petitioners'
residence that qualified as Ms. Trzeciak's section 280A principal place of business
and thus her tax home office, we disagree. We do not believe that respondent's
knowledge during the administrative proceedings that Ms. Trzeciak did work relating
to her rental properties in petitioners' residence imposed an obligation on respondent
to ask petitioners to provide respondent with documentation or other substantiation
establishing that Ms. Trzeciak maintained a work area or an office in that residence
that qualified under section 280A as her principal place of business and thus her tax
home office.[15] It was petitioners' obligation, and not respondent's obligation, to
provide documentation or other substantiation establishing that Ms. Trzeciak
maintained a work area or an office in that residence that qualified under section
280A as her principal place of business and thus her tax home office to respondent.
Respondent's revenue agent even reminded petitioners about their obligation when

---

[15]Petitioners rely on Pizza Indus., Inc. v. Commissioner, T.C. Memo. 1999-108, for the proposition that the Commissioner's position is not substantially justified where the Commissioner fails to adequately examine the information presented by a taxpayer. In Pizza Indus., Inc., the Court held that the Commissioner's position was not substantially justified where the Commissioner did not accept the taxpayer's position as to why income was not taxable. In so holding, the Court found that the Commissioner had failed to interpret properly the taxpayer's rights and obligations under two agreements. We find that case to be materially distinguishable from the instant case and petitioners' reliance on that case to be misplaced.

he alerted them in the revenue agent's August 12, 2008 workpaper that they had made "[n]o mention * * * of a space [in petitioners' residence] that was used regularly and exclusively for the taxpayer's rental activities."  In reminding petitioners that they had made no mention of a "space [in petitioners' residence] that was used regularly and exclusively for the taxpayer's rental activities", respondent's revenue agent paraphrased the requirements of section 280A that, in order for any area in petitioners' residence where Ms. Trzeciak did work relating to her rental properties to qualify as her section 280A principal place of business and thus her tax home, petitioners had to show that that area was used "exclusively * * * on a regular basis * * * as the principal place of business for any trade or business of the taxpayer".  See sec. 280A(a), (c)(1)(A); see also supra note 6.

The reminder that respondent's revenue agent gave to petitioners and Mr. Reagan in the revenue agent's August 12, 2008 workpaper apparently fell on deaf ears.  Petitioners and Mr. Reagan ignored it completely in petitioners' August 18, 2008 letter and in petitioners' protest.  Instead, in petitioners' August 18, 2008 letter to respondent's revenue agent, in which petitioners responded to the revenue agent's August 12, 2008 workpaper, Mr. Reagan argued:  "If the issue of commuting was relevant to management of rental real estate, there would be some mention of it in the IRS guidance.  Absence of this implies that travel for rental property management is

unique." Similarly, in petitioners' protest to respondent's Appeals office, in which petitioners protested the proposed determinations of respondent's revenue agent, Mr. Reagan argued: "The concept of 'commuting' does not apply to managing rental real estate or being a Real Estate Professional."[16]

On the record before us, we find that during the administrative proceedings respondent did not have the obligation that petitioners would impose on respondent

---

[16]Both respondent's revenue agent and respondent's Appeals officer disagreed with petitioners' contention that the concept of "commuting" in the tax law was not "relevant" and did not apply to a real estate professional or to managing rental property. According to respondent's representatives during the administrative proceedings, Ms. Trzeciak's travel time constituted "commuting" in the tax law. Implicit in that position of respondent's representatives was that any expenses associated with that travel (Ms. Trzeciak's travel expenses) are not deductible under sec. 162. See, e.g., Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946). In fact, respondent's revenue agent explicitly pointed that out in his August 12, 2008 workpaper. In that workpaper, he stated: "[Ms. Trzeciak's] [t]ravel time is analogous to personal commute. It is well established the expenses for commuting from home to work are personal and not deductible under IRC 162." During the administrative proceedings, although respondent's representatives considered whether Ms. Trzeciak's travel time constituted "commuting" in the tax law and thus whether Ms. Trzeciak's travel expenses are deductible under sec. 162, the record in the instant proceeding does not establish that they specifically considered whether the so-called common overhead expenses that petitioners claimed in their respective 2005 Schedule E and 2006 Schedule E are deductible under that section. If they did not, we presume that was because respondent was focused on whether petitioners' claimed respective real estate losses for their taxable years 2005 and 2006, which were calculated by taking into account, inter alia, those claimed common overhead expenses, were passive losses under sec. 469. If those claimed losses were passive losses under sec. 469, they would be disallowed for petitioners' taxable years 2005 and 2006.

to ask petitioners to provide respondent with documentation or other substantiation establishing that Ms. Trzeciak maintained a work area or an office in petitioners' residence that qualified as Ms. Trzeciak's section 280A principal place of business and thus her tax home office. On that record, we further find that respondent did not have an obligation to do so before respondent filed the answer in the instant proceeding. At the time respondent filed the answer, respondent knew that petitioners' position during the administrative proceedings had been that the concept of "commuting" in the tax law was not "relevant" and did not apply to a real estate professional or to managing rental property. Moreover, although respondent's counsel was aware at that time that Ms. Trzeciak did work relating to Ms. Trzeciak's real estate activities in petitioners' residence, petitioners did not even allege that fact in the petition, indicating to respondent, and demonstrating to us, that petitioners did not believe that to be a material fact in support of their position in the petition that the Court should not sustain the determinations in the notice.

We find that, in the light of the facts available to respondent at the time the answer was filed and existing legal precedent, respondent's position in this case had a reasonable basis in both fact and law. We further find that respondent has met respondent's burden under section 7430(c)(4)(B)(i) of establishing that respondent's

litigating position was substantially justified with respect to the section 469 determination.[17]

Petitioners argue that even if we were to find, which we have, that respondent's litigating position was substantially justified, they should be treated as the "prevailing party" for purposes of section 7430(a) because of the so-called qualified offer rule of section 7430(c)(4)(E). A party is to be treated under that latter section as the "prevailing party" for purposes of section 7430(a) if "the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party". Sec. 7430(c)(4)(E)(i). The qualified offer provision of section 7430(c)(4)(E) applies without regard to whether the Commissioner's position in the matter is substantially justified. See Haas & Assocs. Accountancy Corp. v. Commissioner, 117 T.C. 48, 59 (2001), aff'd, 55 Fed. Appx. 476 (9th Cir. 2003).

Respondent argues that petitioners are not the "prevailing party" for purposes of section 7430(a) under the qualified offer rule of section 7430(c)(4)(E). In support

---

[17]The record does not establish what, if any, litigation costs petitioners' attorneys incurred with respect to the sec. 6662(a) determination in the notice. We find that petitioners are not entitled to an award under sec. 7430(a) with respect to that determination.

of that argument, respondent relies on the fact that the parties resolved the issues in this case by settling them in the stipulation of settlement that they filed with the Court.

Section 7430(c)(4)(E)(ii)(I) provides that the qualified offer rule shall not apply to "any judgment issued pursuant to a settlement". Respondent conceded all the determinations in the notice immediately after receiving the January 20, 2011 email, and the parties filed a stipulation of settlement on February 11, 2011. Because the parties filed a stipulation of settlement, the parties did not file pretrial memoranda by the date required in the Court's standing pretrial order and they did not execute a stipulation of facts for trial. We find that respondent's concessions in the stipulation of settlement constitute a settlement for purposes of section 7430(c)(4)(E)(ii)(I).[18]

We find that petitioners are not the "prevailing party" for purposes of section 7430(a). We further find that petitioners have failed to carry their burden of estab-

---

[18]Petitioners rely on Estate of Lippitz v. Commissioner, T.C. Memo. 2007-293, in support of their argument that respondent's concessions in the stipulation of settlement should not be treated as a settlement for purposes of sec. 7430(c)(4)(E)(ii). In Estate of Lippitz, the Court held that a concession by the Commissioner did not constitute a settlement where the taxpayer had made "multiple settlement offers" and was forced to "actively litigate" the case by filing a motion for partial summary judgment. We find that case to be materially distinguishable from the instant case and petitioners' reliance on that case to be misplaced. See Gladden v. Commissioner, 120 T.C. 446, 449-450 (2003).

lishing that they are entitled to an award of reasonable litigation costs under that section.

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>An order denying petitioners'</u>

<u>motion and decision for petitioners will</u>

<u>be entered</u>.